## CYBOROWSKI v. KINSMAN TRANSIT CO.

(Circuit Court of Appeals, Sixth Circuit. June 15, 1910.)

No. 2,005.

1. EVIDENCE (§ 123*)—RES GESTÆ—STATEMENTS BY AGENT.

A statement, made by the master of a vessel some time after the injury of a stevedore, tending to show that he had previous knowledge of the insecure condition of a trim board, which fell and caused the injury, was not a part of the res gestæ, but a narrative of a past transaction, and inadmissible to bind the owner of the vessel, in an action against him for the injury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 351–368; Dec. Dig. § 123.*]

2. SHIPPING (§ 84*)—LIABILITY OF VESSEL OWNER FOR TORTS—INJURY TO STEVEDORE.

In an action against a vessel owner to recover for the death of a stevedore's employé, who was killed by the falling of a trim board alleged to have been hanging in a dangerous position, assuming that defendant stood in the relation of a master to the deceased, it was incumbent on plaintiff to prove that defendant knew of the dangerous position of the board long enough before the accident for it to have been remedied, or that its condition should have been known by defendant in the exercise of reasonable care; and where neither of such things was alleged or shown, and there was no evidence showing how long the board had been in such position, or that it was not so placed through the negligence of the fellow servants of the deceased after they began work, no case of negligence was made out against defendant which warranted a recovery.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84;* Master and Servant, Cent. Dig. § 492.]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Action by Wincenta Cyborowski against the Kinsman Transit Company. Judgment for defendant, and plaintiff brings error. Affirmed.

F. B. Williams, for plaintiff in error.

F. L. Leckie, for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and EVANS, District Judge.

EVANS, District Judge. The plaintiff, the widow of Theofil Cyborowski, brought this action in the court below to recover $10,000 damages from the defendant for the negligent killing of her husband. The cause of action arose in the state of Pennsylvania, and as the widow of the deceased the plaintiff claims under the laws of that state the right to any damages which are now recoverable. We shall assume that the laws of Pennsylvania support this claim. In her petition she states:

"That on or before the 15th day of August, 1907, the said defendant was possessed of and had the management and control of a certain steamboat called Matthew Andrews, then lying alongside a certain dock, known as the Philadelphia & Erie ore dock, in the harbor of the city of Erie, in the state of Pennsylvania, aforesaid. * * * And at the time and place aforesaid the boat aforesaid, while lying at said dock, was being unloaded of her cargo of iron ore, with which it was laden, which was being taken out of the said vessel and placed upon the said dock by means of ore buckets operated by machinery, but which buckets were filled by men working in the hold of the vessel.

"At the time and place aforesaid Theofil Cyborowski, the husband of the plaintiff in this case, and a stevedore, was in the employ of one James Thompson, a contractor on the docks at Erie, and while in the employ of the said Thompson was sent with other men to unload the said steamboat Matthew Andrews, as plaintiff is informed and believes, at the request of and on behalf of the agents of the defendant company, in the work of unloading ore from the said boat, it being his particular duty to assist in filling the buckets in the hold of the ship, and while so engaged at about 8 p. m. on the day aforesaid, while working underneath one of the hatches in said boat, a board, commonly known as a trim board, came loose from its fastenings and fell upon and struck him with great force. The said trim board was a board about sixteen (16) feet long, about three (3) feet in width, and about two and one-half (2½) inches in thickness, and was suspended by chains fastened at each end of the board, which chains were intended to be hitched into hooks fastened to the side of the hatchways or openings in the deck.

"During the day prior to the evening on which the accident hereinbefore mentioned occurred, one of the chains which held the trim board in its place was loose, and remained in the said condition, and was left hanging above where the men engaged in filling the buckets with ore were at work, without sufficient support to maintain it there in safety, and, being in this unsafe condition when the husband of the plaintiff in this case was at work at the time and place aforesaid, became unfastened entirely, and fell a considerable distance, and struck him, which falling of the said trim board and the injuries inflicted upon the husband of the plaintiff thereby was occasioned by, through, and because of the negligence and lack of care on the part of the defendant company, its agents and servants in charge of the said boat, and without any fault or negligence on the part of the deceased; that the said deceased, Theofil Cyborowski, had no knowledge of the condition in which the said trim board which fell upon him and caused his injuries was fastened and he did not know that the said board was suspended in the way it was and had never been notified nor in any way made cognizant that he was in danger of being injured by the falling of the same while engaged at his work. * * *

"The plaintiff further avers that the defendant company and its agents and servants who were in authority in the operating and management of said boat were grossly negligent in permitting the said trim board to be hung in such a condition or to be left a long time in such a manner without being securely fastened that it was liable to fall at any time as it did, it being the duty of said defendant and its agents and employés to take proper precaution and use due care for the safety of the men working in the said boat, and alleges that the duty thus owing to the defendant in this case was not performed, and that by reason of the neglect of the said defendant to perform its duty the said accident was caused, and the injuries and death of the said Cyborowski was occasioned thereby."

The case was tried before a jury, and at the conclusion of the plaintiff's testimony the defendant moved the court to direct a verdict in its favor. The court sustained the motion, and exception was taken.

The principal issue raised by the pleadings was whether the defendant had been guilty of the negligence alleged against it. It appears from the testimony that after the landing of the steamboat at the dock she was turned over to one James Thompson, who had contracted

to unload her. The plaintiff's intestate worked for Thompson, the contractor, and not for the defendant, the owner of the vessel. In carrying on his work Thompson had two shifts or gangs. There were "twelve men in a gang—thirteen including the dumper—three men at a bucket and four buckets in the hold." One of these shifts worked in the day and the other at night. Cyborowski was a coal shoveler, and belonged to the night shift. On the day of the accident the day shift had worked until 6 p. m. Then followed an interval of an hour before the night shift went to work at 7 p. m. During that interval the defendant had one watchman, and probably two, on the boat. The vessel was a large one, and appears to have been especially constructed for the transportation of iron ore. Its deck contained 32 hatches, each of which was probably 30 feet long and 10 feet wide. In each of these hatches there swung what is called a trim board, which was 16 to 18 feet long and 30 inches wide, and made up of two or three heavy boards bolted together with iron cleats. This trim board was suspended horizontally upon hooks in the middle of the hatch. As ore was being poured into the vessel when she was loading in the upper lakes, these boards were designed to help trim the vessel by forcing some of the ore to one side and some of it to the other, and thus aid in distributing it in the hold. In one of the hatches one of the hooks which held the trim board in a horizontal position at some time and in some way on the day of the accident became detached, leaving the board hanging from the margin of the hatch down into the hold, which was about 25 feet deep. Cyborowski was in the hold shortly after 7 p. m. assisting in shoveling ore into buckets to be hoisted through the hatch in which the trim board was hanging. He was working under that particular hatch, but some distance from the suspended trim board. A bucket was filled and attached to the hoisting apparatus, which was worked by steam. The signal was given, and with unusual swiftness the hoist was made. The cable and the bucket struck the trim board with great force, and detached it from the other hook. It fell upon the deceased, and inflicted the injuries from which he afterwards died. This hanging trim board was in plain view of those at work, and no testimony seems to indicate that it was of itself dangerous. It only became so if struck by something else.

There was no testimony to show how the trim board was so detached from one of its hooks as to be put in a vertical position. There was no testimony to show precisely when it got into that position nor by whose agency. The first time its derangement was noticed was about 7:05 p. m., soon after the night shift went to work. This was about 15 to 20 minutes before the accident. The attention of the defendant was not shown to have been called to the condition of the trim board until after the accident occurred. The only attempt to do so was by telling the watchman to take the board out of the way; the watchman replying that he was about going off duty, but that his "partner" would be there in a few minutes, and he "would tell him." There was no showing that this watchman had any authority to represent the defendant with respect to the receiving of notice of a condition such as is here complained of. No one of the day shift was called as a witness

by plaintiff, and no one of them testified to having seen this trim board before that shift quit work at 6 p. m.

In the examination by plaintiff of the witness Vogel, who was one of Thompson's foremen, and who was in charge of the night shift, he was asked if, after the accident, he had a conversation with the master of the boat. The court sustained an objection to the question, and this ruling is assigned for error. The plaintiff's avowal in this connection was that, if the witness were permitted to answer, he would say, "I tried to get them to stop in the afternoon so I could fix it, but they would not stop;" the avowed object being to show that the boat crew knew the condition of the trim board in time to have corrected it between 6 and 7 o'clock. The avowal shows that the alleged conversation was had "a short time" after the accident. Other parts of Vogel's testimony show that it took place after the arrival of the ambulance, and after Cyborowski had been put into it by the assistance of the witness and others. The purpose of the proposed testimony was to bind the defendant, not by proving what the fact really was, but by showing what one of the defendant's servants, while not under oath, had stated or admitted it to be. The supposed admission or statement by the servant was made after the accident, and there is nothing to show that it was made by the authority of the defendant, nor does it appear to have been made in the course of the servant's duty. It was not made contemporaneously with the accident, and was not, therefore, part of the res gestæ. It was only the narrative of a past occurrence, and we are clearly of opinion that the ruling of the court below was right upon the authority of the very analogous case of Vicksburg & Meridian R. R. Co. v. O'Brien, 119 U. S. 103–106, 7 Sup. Ct. 118, 30 L. Ed. 299. See, also, the opinion of this court in Inman Bros. v. Dudley, etc., Co., 146 Fed. 449, 76 C. C. A. 659.

The other assignments of error all have reference to the action of the trial court in directing a verdict for the defendant. The established doctrine is that a ruling of that character should only be made where, giving the plaintiff the benefit of every inference that could reasonably be drawn therefrom in his favor, the testimony nevertheless fails to establish the facts alleged as the basis of the action. The vital question here was whether the defendant had been negligent in the discharge of some duty which, under the circumstances of this case, it owed to an employé of the contractor, Thompson, and whether the negligence, if any, of the defendant, was the proximate cause of the injury.

The proposition most pressed upon our attention by the learned counsel for the plaintiff was that it was the duty of the defendant to furnish a reasonably safe place for those persons to work in who might be employed to unload the steamer. The general proposition is not open to question, though when a negligent discharge of this duty is alleged by a servant against a master the proposition becomes somewhat more complex than the general statement of the rule suggests. The deceased, strictly speaking, was an employé of Thompson, and not of the defendant; but the plaintiff in her petition avers that the deceased was sent with other men to unload the steamboat at the

request of the defendant through its agents. This averment, we take it, was intended by the plaintiff to show that the defendant was under the duty of providing a reasonably safe place for such persons to work in as were engaged in unloading the vessel, whether directly employed by the owner or not. Doubtless plaintiff's theory in framing her petition was that the defendant, in the broad sense, was the master and the deceased the servant, although more direct relations might exist between him and Thompson.

We for this occasion accept this theory, for otherwise the deceased, as between himself and the defendant, might have been a stranger or an intruder on the boat, to whom the defendant owed no duty. But the duty of the master to provide a safe place was not absolute, nor was the master an insurer of the safety of the servant. The duty of the master was to use reasonable care to provide a reasonably safe working place. If such care was not used, there was negligence; otherwise, not. The plaintiff in her petition does not in terms allege that the defendant knew of the dangerous condition of the trim board long enough before the accident for it to have been remedied, nor that its condition could have been discovered and remedied by the use of due care and prudent inspection. Nevertheless these things were essential elements of any negligence charged against the master, and their existence should have been shown by substantial testimony. Nor could this be avoided by an omission of any statement in respect to them in the petition where the plaintiff did not choose to be very specific in details. In a case between master and servant proof of an injury does not of itself justify a presumption of negligence. Moit v. Illinois Central R. R. Co., 153 Fed. 356, 82 C. C. A. 430 (decided by this court), Omaha Packing Co. v. Sanduski, 155 Fed. 899, 84 C. C. A. 89, 19 L. R. A. (N. S.) 355.

And so in Carnegie Steel Co. v. Byers, 149 Fed., at page 669, 82 C. C. A., at page 117, 8 L. R. A. (N. S.) 677, this court said:

"In such a suit it is not enough to show that there was a defective tool or machine, and that the injury was due to such defect. The servant must go further, and show that the defect was known to the master for a sufficient time to have enabled him to repair, or should have been known, if there had been due inspection according to the ordinary course of prudent employers. Texas & Pacific Ry. Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Illinois Cent. Railroad Co. v. Coughlin, 132 Fed. 801, 65 C. C. A. 101. In Cincinnati, etc., Railroad Co. v. South Fork Coal Co., 139 Fed. 528, 71 C. C. A. 316, 1 L. R. A. (N. S.) 533, we gave elaborate consideration to the circumstances under which the fact of negligence may be inferred from the nature of an accident and noted the distinctions to be observed in applying the rule of res ipsa loquitur in suits between employers and servants and those in which liability to passengers or strangers is involved. It was not enough to show that this accident had occurred through an erratic and unexplainable rising of the elevator. That might have made a prima facie case of negligence in favor of a passenger or stranger; but the plaintiff was an employé, and the burden was upon him to show that this sudden erratic upward movement was due to some defect in the mechanism, which was known or should have been known to the Carnegie Company, and which they had neglected to repair. The distinction referred to is pointed out in the cases cited above. The pinch of the case was, not only whether the plaintiff had shown a defective valve, which might have produced such an unexpected and rapid movement as that

described by the plaintiff, but also whether the defect was known, or might have been known if ordinary care had been exercised."

The opinion of the Supreme Court in Patton v. Texas & Pacific Ry. Co., 179 U. S. 663, 21 Sup. Ct. 275, 45 L. Ed. 361, is strongly to the same effect.

The rule stated in Carnegie Steel Co. v. Byers may probably apply with even greater force here where there is an absence of proof (1) that the trim board was detached before the contractor took possession of the vessel; (2) that its detachment was not the work of the fellow servants of the deceased during the time when the day shift was hoisting ore through the hatch, whereby the detachment might have been brought about; and (3) that the defendant knew, or could by due inspection have known, of the condition of the trim board in time to have put it in a safe position before the accident occurred. Besides, it was manifest folly for the night shift, composed, as we must suppose, of reasonably sensible men, not themselves with the hoisting tackle or otherwise to have hooked the trim board up to its proper place if the danger of its swinging position was obvious. Cyborowski shared in this folly of his fellow servants. Indeed, it is almost impossible to avoid the conviction that the condition of the trim board was brought about by the carelessness of the stevedores engaged in the work of unloading, and that that negligence of the fellow servants of the deceased was the proximate cause of his injury.

But, be that as it may, manifestly the burden of proving the essential elements of the negligence she charged rested upon the plaintiff. Testimony confined to the condition of the appliance and to the mere happening of the accident was not sufficient to establish negligence in this action by the representative of an employé. Plaintiff should have gone further, and should have shown actual knowledge on defendant's part of the condition of the trim board, or knowledge which should be imputed to it because of a sufficiently long existence of the defect to have enabled defendant to discover it by prudent inspection. We have concluded that the plaintiff, by confining her testimony to the matters indicated, and by not showing either that the trim board had become detached before the day shift of Thompson's employés went to work or that, if afterwards detached, it had remained in that condition long enough to justify an inference of negligence in not discovering or remedying the defective condition, failed to prove the negligence she had charged against the defendant.

But, though possibly somewhat inconsistently with the claim that the defendant was bound to provide a reasonably safe place for the deceased to work in—a claim which must in large measure if not entirely depend upon the existence of the relation of employer and employé— the learned counsel for the plaintiff insists that the defendant was guilty of negligence, as were also Thompson's employés, and ingeniously urges: (1) That the fellow-servant doctrine does not apply to this case, because the men employed by Thompson were not servants of the defendant; (2) that the doctrine of assumed risks cannot be applied between the plaintiff and the defendant, because the relation of master and servant did not exist between the deceased and the defend-

ant; and consequently (3) that this case presents an instance where the injury was the result of the concurrent negligence of two persons, which makes both liable when the case is considered independently of the doctrine of assumed risks and of that relating to fellow servants.

The keystone of this proposition is that the defendant was guilty of negligence equally, or at least concurrently, with Thompson's employés; but, as we have seen, there was a failure to prove that the defendant had been guilty of any negligence, or of any failure to perform any duty it owed the deceased, and thus the proposition falls to the ground. The suggestion that the fellow-servant doctrine is not applicable, from the fact that the relation of master and servant did not exist between defendant on the one hand and the deceased and his colaborers on the other, is somewhat academic; for, if that relation be rejected, it is enough to say that the fellow laborers of deceased were not the servants of defendant, and thus the latter is not responsible for their negligence.

To the claim that the deceased was not subject to the doctrine of assumed risks, it is sufficient to say that this, also, is academic. Whatever peril arose from working in the place and under conditions that were obvious, the deceased must be treated as having voluntarily subjected himself to, without regard to the relations which either he or those working with him bore to the defendant.

Viewing the case from any standpoint suggested by the record, we are satisfied that the direction to the jury was proper.

The judgment must be affirmed.