# Southern Railway Company *v.* Smith.

## *Damage for Death of Person on Track.*

(Decided June 6, 1911. 55 South. 913.)

1. *Railroads; Persons on Track; Trespasser; Children.*—Where a child six years old was a trespasser on a railroad track, and was killed by a train, the railroad company and its servants owed it no more duty than it owed other trespassers under similar conditions, considering the fact of its age and condition, and that it was apparently asleep on the track at the time of the injury.

2. *Same; Pleading.*—Where the action was for damages for the death of a child on a railroad track, it was not necessary that the counts should allege that the child was on the particular track on which the train was, and that there was but one track.

3. *Same; Evidence.*—Where the action was for causing the death of a child on the track, evidence that the track at the point of the injury was constantly used by the public as a footway, though not admissible to show any right that the decedent had to be on the track, or to show that he was not a trespasser, was admissible on the question of wanton negligence, in connection with the evidence

that those in charge of the train knew of such use of the track by the public.

4. *Same; Jury Question.*—The evidence in this case examined and held insufficient to warrant the submission of the question of wantonness to the jury.

5. *Pleading; Objection; Aider by Proof.*—In an action for causing the death of a child on the track, a demurrer to a count because it did not show that the injury occurred in this state was properly overruled where it appeared that the cause had once been tried and all the evidence showed that the injury did occur in this state.

6. *Appeal and Error; Reversal; New Pleading; Dilatory Plea.*—Where an action for causing the death of a child on a railroad track had been once tried, and on appeal the judgment was reversed, it was within the discretion of the trial court on the second trial to refuse to permit the defendant to file a dilatory plea setting up that the plaintiff was not the administrator at the time the plea was offered.

7. *Same; Decision; Effect in Lower Court.*—Where it was held on a former appeal that the question as to the duty to keep a lookout at the place of the injury was for the jury, it was proper on a subsequent trial to refuse instructions asserting that neither the speed of the train nor the failure to keep a lookout were evidence of negligence, and that the trainmen owed no duty to the deceased to keep a lookout.

8. *Charg of Court; Argumentative.*—Where the action was for damages for causing the death of a child, brought under the homicide act, a charge asserting that the damages recoverable are not intended to compensate the parents for the death of the child, but should be such sum as would be sufficient to punish the act done, and if defendant's engineer ran the engine against the deceased through mere negligence or error of judgment, plaintiff ought not to recover as much as if it had been wantonly or intentionally done, was argumentative and properly refused.

9. *Same.*—Charges asserting that the jury will consider that men and women may be operated on by their sympathies, one way or the other, that the sympathies of the people come out strongly in favor of the weaker party, or the female sex, or the poor man, but the jurors have no right to act on any prejudice or sympathy of that kind, but are to try to do exact justice between the parties as though they were two individuals standing on perfect equality in all respects, that the case should be considered by the jury as between two persons of equal standing, and that the fact that one of the parties is a corporation should not affect their minds in any way, are argumentative and properly refused.

10. *Same; Excluding Issues.*—Where the evidence presented a question of subsequent negligence, a charge asserting that under the undisputd evidence plaintiff's decedent was unlawfully on the track, and the defendant owed him no duty except not to injure him wantonly, negligently or intentionally, was properly refused as excluding the issue of such subsequent negligence.

11. *Same; Weight and Sufficiency of Evidence.*—The trial courts are under no duty to charge juries that there is no evidence of a given fact.

12. *Same; Confused Instructions.*—Charges which are confused and uncertain in meaning may be refused without error.

APPEAL from Jackson Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by A. J. Smith, as administrator, against the Southern Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The rulings on the pleadings sufficiently appear from the opinion of the court, as do the facts in the case.

The following charges were refused to the defendant: (10) "The damages recoverable in this case, if any, are not intended in any way to compensate the parents of deceased for the death of their son, but would be such sum as in your judgment would be sufficient to punish the act done; and if you believe from the evidence that the engineer ran the engine against deceased through mere negligence or error of judgment, plaintiff ought not to recover as much as if the engineer had wantonly or intentionally run his train against deceased." (12) "You will consider that men and women may be operated on by their sympathies one way or another. The sympathies of people come out very strongly sometimes in favor of the weaker party, or the female sex, or the poor man; but the jurors have no right to act upon any prejudice or any sympathy of that kind. You are to try to do exact justice between the parties, just as though they were two individuals standing upon perfect equality in all respects. Their rights are the same, and your duties to each party are the same, and they are not to be evaded." (18) "The court instructs the jury that this case should be considered by the jury as between two persons of equal standing in a community. The fact that one of the parties is a corporation should not affect your minds in any way; but the right of each party should and must be determined upon the evidence introduced in the case, and the instructions given

to the jury, which are the law to guide you in your deliberations." (21) "Neither the speed of the train nor the failure to keep a lookout are evidence of negligence in this case. I charge you that from the evidence in this case the child was a trespasser, and the fact, if it be a fact, that people were accustomed to pass along the track at said place in large numbers would not make Robert Smith any the less a trespasser." (31) "The trainmen owed deceased no duty to keep a lookout. Any negligence of the trainmen sufficient to permit of a recovery in this case must have occurred after the child's presence on the track was discovered by them." (25) "Under the undisputed evidence in this case the deceased was unlawfully on the track, and the defendant owed him no duty, except not to injure him wantonly, recklessly, or intentionally." (33) "There is no evidence in this case which would authorize the jury to presume that the engineer was reckless of human life, and acted in a way that is in disregard of the duties imposed upon him as the engineer of the train." Charge 34, in the record, is the general affirmative charge for the defendant. (36) "No recovery can be had in this case for any negligence of the engineer in failing to discover the child on the track, or for a failure to discover him sooner than he did, if you find from the evidence that he did discover him before the engine struck him, under the fourth count."

LAWRENCE E. BROWN, for appellant. Counsel discuss the demurrers to the complaint, but without citation of authority. The court erred in not permitting defendant to file plea C.—Sec. 5331, Code 1907; *Espalla v. Richards*, 94 Ala. 163; *L. & N. v. Trammel*, 93 Ala. 353; *Wilson v. Brothwell*, 50 Ala. 378; *Sadler v. Fisher*, 3 Ala. 202. The court erred in permitting proof as to the frequency of the use of the track as a pass way.—

*Glass v. M. & C. Ry. Co.,* 94 Ala. 581. Written charge
10 should have been given.—Sec. 2486, Code 1907; *Sul-
livan's Case,* 59 Ala. 272. Charges 12 and 18 were
proper.—71 Mich. 61; 102 Mo. 110. Charges 21 and 25
should have been given.—*So. Ry. v. Stewart,* 51 South.
325; *So. Ry. v. Forrester,* 158 Ala. 477; *A. G. S. .v. Ful-
tcn,* 144 Ala. 332; *A. G. S. v. Lynn,* 103 Ala. 139.
Charge 26 should have been given.—*B. R. L. & P. Co. v.
Jones,* 153 Ala. 157. Written charge A should have
been given, as the evidence was not sufficient to submit
to the jury the question of wantonness.—*So. Ry. Co. v.
Stewart,* 51 South. 325. Counsel discuss other written
charges refused, but without citation of authority, but
insist that on the authority of *So. Ry. v. Drake,* 51
South. 996, that the evidence did not establish negli-
gence after the discovery of peril.

VIRGIL BOULDIN, for appellee. The evidence warrant-
ed the finding of wanton injury after discovery of peril.
—*Forrester's Case,* 158 Ala. 477; *Bush's Case,* 122 Ala.
470; *Burgess' Case,* 114 Ala. 587. It also warranted a
finding of wantonness because of imputed notice of
danger at that point.—*Fox's Case,* 52 South. 889;
*Hyde's Case,* 51 South. 368; *Wallace's Case,* 51 South.
371. The evidence certainly warranted a finding of
negligence after such discovery of peril.—*So. Ry. Co. v.
Smith,* 163 Ala. 174. Charge 21 was properly refused.
—*N. C. & St. L. v. Harris,* 142 Ala. 253; *So. Ry. v.
Smith, supra; Talley's Case,* 102 Ala. 21. It was with-
in the discretion of the court to decline to permit the
dilatory plea offered.—*Davis Co. v. Cannon,* 129 Ala.
301; *Reid L. Co. v. Lewis,* 94 Ala. 626. Written charge
10 was properly refused.—Sec. 2486, Code 1907; *Bush's
Case, supra.* Counsel discuss other charges refused, but
without citation of authority.

MAYFIELD, J.—The action is under the homicide statute (Code 1907, § 2485) for the wrongful death of a child six years old. The child was killed by being run over by a passenger train on appellant's railroad. The injury occurred about 1 o'clock in the afternoon, and at a point about a quarter of a mile from a station, on appellant's road, in the little town or village of Larkinsville.

The parents of the child lived within a few yards of the railroad track, very near the place at which the child was killed. The child and its older brother were at the home of their parents at the time of the injury. The older one was in the house, attending to some domestic duties, while intestate was playing out of doors. The older child had observed the younger on the track a few minutes (estimated at eight) before the accident. The mother had gone to the depot, which was about a quarter of a mile from her home and the scene of the accident. No one seems to have seen the child that was killed from the time its brother saw it, about eight minutes before the accident, to the time it was discovered by the engineer in charge of the locomotive that struck it—just a few seconds before the injury.

The engineer was the only person shown to have witnessed the accident. His evidence was that he saw the child lying on the track, near the middle, with one foot across one of the rails, and apparently asleep; that he first discovered it when within 80, 90, or 100 yards of it, when the train was running about 25 miles per hour. He testified that as soon as he discovered the presence of the child on the track he shut off steam and applied the emergency brakes, and that this was all he could do; that he brought the train to a stop in about "four car lengths and the engine and tender;" that this would be about 20 yards to the car, and that the engine and tender are equally as long; that the cars were all about the

same length, except the ladies' car, which was about 70 feet in length. The engine and train had just left Larkinsville.

One Mrs. Downs testified that she lived about 100 yards from the place of the accident; that she went to the scene of the accident as soon as the train stopped; that she asked the engineer what he killed Mr. Albert Smith's little boy for, and he said he saw the child, but kept thinking it would get off the track, until it was too late to stop the engine, and that he said the child must have been asleep. The engineer denied having made this statement to this witness.

Another witness for plaintiff, who was a passenger on the train, testified that the engineer told him, on the occasion of the injury, that when he (the engineer) first saw something on the track he thought it was a piece of paper but that when he discovered that it was a child it was too late to stop the train; that the train had gotten under good headway. The plaintiff testified that he had been on engines in motion, and that he could see as well as when on the ground.

There was evidence that the railroad track at the place of the injury was frequently and much used by the public, and that this fact was known to the engineer and other agents in charge of the train. To the introduction of this evidence the defendant reserved many exceptions.

It was ruled by this court (and we think correctly), on the former appeal, that the unfortunate child was a trespasser upon the track of the defendant when it was killed, and therefore that the defendant and its servants owed it only the duty they owed other trespassers under similar conditions, considering the facts of its age and condition, and that it was apparently asleep on the track at the time of the injury. The law on this subject (the killing of an infant while a trespasser on a

railroad track) has been often declared by this court.—
*G. P. R. R. Co. v. Blanton,* 84 Ala. 154, 4 South. 621; *A.
G. S. R. R. Co. v. Moorer,* 116 Ala. 642, 22 South. 900;
*H. A. & B. R R. Co. v Robbins,* 124 Ala. 113,, 27 South.
422, 82 Am. St. Rep. 153; *G. & A. U. Ry. Co.. v.. Julian,*
133 Ala. 371, 32 South. 135.

*Moorer's Case, supra,* reviews the authorities on the
subject, and adopts the rule stated by Mr. Elliott, in his
work on Railroads (section 125), as the correct one. In
the above case this court said: " 'In actions for inju-
ries to children, as in other cases, there can be no recov-
ery, unless defendant has been guilty of a breach of du-
ty. * * * There is a sharp conflict among the au-
thorities, however, as to what the duty of a railroad
company is to children who come upon its premises as
trespassers or mere licensees. We believe the true rule
to be that, although the age of the child may be impor-
tant in determining the question of contributory negli-
gence, or the duty of the company after discovering
him, the company is, in general, no more bound to keep
its premises safe for children who are trespassers or
bare licensees, not invited or enticed by it, than it is to
keep them safe for adults.' This rule, of course, does
not apply to children, or to any other person, at a place
where they have a right to be, as for instance in a pub-
lic highway, where it crosses the track, in which case
they are not to be treated as trespassers."

The court properly overruled defendant's demurrer to
count 2. The only reason urged to. show error is that
this count did not show that the injury occurred in the
state of Alabama. This cause has been tried once be-
fore; and all the evidence, including that of defendant,
showed that the injury, and only injury, complained of
did occur in Alabama. .The trial court and the parties
all knew the particular injury relied upon, and knew
that the injury did occur in this state. The want of

jurisdiction did not affirmatively appear on the face of the count, so as to subject it to demurrer for such want; nor was there any necessity to make it more certain as to where the injury occurred. This all the parties and the court knew when this demurrer was passed upon

It was likewise not necessary for count 4 to allege that the child was on the particular track upon which the train was, and that there was but one track. If there were more than one track at this point, and the child was upon a different track, this was a subject for a special plea; it was not necessary for the complainant to negative that there were more tracks than one at this point.

The court very properly declined to allow the defendant to file the dilatory plea that plaintiff was not the administrator at the time such plea was offered. The case had been tried once, and appealed to this court and reversed, and it was the second trial before the plea was offered. It came too late for the defendant to be entitled, as matter of right, to file it; and it is not made to appear that the trial court abused its discretion in declining to allow it to be filed.

The trial court properly allowed evidence tending to show that the track of the defendant railroad company at the point of the injury was constantly used by the public as a path or footway. In other words, under the issues in this case of wanton and subsequent negligence, it was permissible to show that the track of defendant at the point of the injury was a way over which the public were wont to go frequently and in great numbers, and that this fact was known to the servants or agents of defendant in charge of the train on the fatal occasion. Such evidence was not admissible for the purpose of showing that decedent had a right to be on the track—that he was not a trespasser; but it was admissible on the question of wanton negligence, in con-

nection with evidence that those in charge of the train
had knowledge of such use of the track by the public.

In *Fox's Case,* 167 Ala. 281, 52 South. 890, this court
spoke on this subject as follows: "It is true that it is
said in *Glass' Case,* 94 Ala. 586, 10 South. 215, that evi-
dence of such custom or habit is not admissible; but
what the writer evidently meant was that such evidence
was not admissible for the purpose of showing that a
person on the track, under such conditions, was a tres-
passer nevertheless.    That is evident from the quota-
tion which immediately precedes it, and from what the
writer says immediately thereafter, in the same opinion.
Such evidence is not admissible for the purpose of show-
ing that the person on the track is not a trespasser, for
he is, notwithstanding the custom or habit, still a tres-
passer, but it is competent and admissible, in connec-
tion with other evidence, to show wanton negligence or
willful injury on the part of the engineer or persons in
control of the train while passing such point."

Charges 10, 12, and 18, if not otherwise objectionable,
were argumentative, and for that reason were properly
refused.

As was ruled in this case on the former appeal, it was
a question for the jury as to the duty to keep a lookout
at the place of the injury; and for this reason charge
21 and 31 were properly refused.

Charge 25 was not correct when applied to the evi-
dence in this case.    The question of subsequent negli-
gence was one for the jury, and this charge took that
question from the jury.

Trial courts, as has been often ruled by this court,
are under no duty to charge juries that there is no evi-
dence of a given fact.    For this reason, if for no other,
charge 33 was properly refused.

Charge 36 is confused and uncertain in its meaning,
and for this reason, if for no other, was properly re-
fused.

The evidence in this case has been carefully examined, and we have reached the conclusion that it did not warrant the submission of the question of wantonness to the jury. The court instructed the jury, at defendant's request, that there could be no recovery as for willful injury; and we are of opinion that the court erred in refusing the affirmative charge to the defendant as to the second count, which declared on wanton conduct. There was no evidence of a willful or intentional injury, nor was there any evidence of such wanton conduct as would be the equivalent of willful or intentional injury. The only culpability shown was that of simple negligence alone. While some of the conditions were shown which often attend wantonness, such as that the injury occurred at a point on the defendant's track which was frequently used by the public, and this fact of use was known to the servants or agents of defendant in charge or control of the train, yet there was no evidence of any act or omission, on the part of these servants, which could be said to be wantonness.

The train was not being run at a rapid rate of speed, but only at the usual speed of 25 miles per hour. It was not shown that there was a willful or negligent failure to keep a lookout for persons on the track; but, on the contrary, it was affirmatively shown that such a lookout was being kept, and that the unfortunate child was discovered to be on the track when the engine was within 80, 90, or 100 yards of it, and that the engineer used all the means within his power, after discovery of the peril, to stop the train, though his efforts proved unavailing. While there was evidence tending to show that he did not use such means at the very moment he discovered the presence of the child, or an object, on the track, yet this evidence showed that he did so as soon as he was aware that it was a child, and that it was not going to move, or could not move or get off the track.

Adverting to the testimony of the woman, to the effect that the engineer told her (at the time of the accident) that he kept thinking the child would get off the track, and that it must have been asleep, and to that of the witness who said the engineer told him that when he first saw the object on the track he thought it was a piece of paper, while this evidence may have tended to show negligence on the part of the engineer in not using all the preventive means at hand or known to skillful engineers, and that he did not use these methods as soon as he might or should have used them, or to show that a skillful and competent engineer could and would have prevented the accident by discovering the child and recognizing its peril sooner, or that a skillful and competent engineer, or even the one in question, could have prevented the injury after the discovery of the peril, by using other and different methods of preventing the injury, such as blowing the whistle, ringing the bell, or reversing the engine, yet a failure to do these things, as made clear by all the evidence, disputed and undisputed, shows or tends to show nothing more than simple and subsequent negligence.

As has been often said by this court, a mere error of judgment as to the result of doing an act, or of failing to act, having no evil purpose or intent, nor consciousness of probable injury, may constitute simple negligence, but cannot rise to the degree of wanton negligence or willful wrong. Under all the evidence in this case, and under the law as often iterated by this court, the plaintiff was not entitled to recover under the second count of the complaint, which declared on wanton negligence.—See *Bowers' Case,* 110 Ala. 328, 20 South. 345; *Lee's Case,* 92 Ala. 272, 9 South. 230; *Webb's Case,* 97 Ala. 308, 12 South. 374; *Anchors' Case,* 114 Ala. 501, 22 South. 279, 62 Am. St. Rep. 116; *Moorer's Case,* 116 Ala. 645, 22 South. 900.

[Darby v. City of Union Springs.]

While there was no direct or positive evidence of subsequent negligence after discovery of the peril, there was such evidence of fact, and such conflict of evidence, as to authorize the jury to infer the existence of such negligence; and for this reason the trial court properly declined to give the affirmative charge for the defendant as to the count declaring on subsequent negligence after discovery of peril.

For the error pointed out, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON, ANDERSON, SAYRE, and SOMERVILLE, JJ., concur.