(118 So. 755)

CENTRAL OF GEORGIA RY. CO. v. CORBITT. (4 Div. 380.)

Supreme Court of Alabama. Nov. 22, 1928.

G. L. Comer & Son, of Eufaula, for appellant.

Frank M. De Graffenried, of Seale, for appellee.

BROWN, J. This is an action under the Homicide Act, Code § 5696, by the administrator of Willie Corbitt, deceased, against the appellant, for wrongfully causing the death of plaintiff's intestate. Before the case was submitted to the jury, the complaint was amended by withdrawing counts 1, 2, and 3, and the case was submitted to the jury under counts 4 and 5.

Count 4 ascribes the death of plaintiff's intestate to the willful and intentional wrong of the servants of the defendant engaged in operating a freight train on the defendant's railroad, while count 5 ascribes his death to the negligence of such servants after the discovery of his peril on the track. The verdict of the jury was returned under the fourth count operating as an acquittal of the defendant of negligence as charged under the fifth count, a result not inconsistent with correct application of the principles upon which such liability may be sustained. McNeil v. Munson S. S. Lines, 184 Ala. 420, 63 So. 992; Sington v. B'ham Ry. L. & P. Co., 200 Ala. 282, 76 So. 48.

The defendant requested the affirmative charge as to count 4, which was refused, and the conclusion which we have reached is that this was error for which the judgment must be reversed, rendering other questions unimportant as they may not arise on another trial.

While as to liability and the defenses which may be interposed, there is no difference between wanton injury and willful or intentional injury, there is a well-recognized distinction in the elements of these two classes of wrongs. To constitute willful or intentional injury there must be a knowledge of the danger accompanied with a design or purpose to inflict injury, whether the act be one of commission or omission, while in wantonness this design or purpose may be absent, and the act done or omitted with knowledge of the probable consequence, and with reckless disregard of such consequence. Alabama G. S. R. R. Co. v. Moorer, 116 Ala. 642, 22 So. 900; Birmingham R. & E. Co. v. Bowers, 110 Ala. 328, 20 So. 345; Louisville & N. R. R. Co. v. Anchors, Adm'r, 114 Ala. 492, 22 So. 279, 62 Am. St. Rep. 116.

And as for the element of knowledge of peril on the part of the person charged with the wrong, there is no distinction in principle between subsequent negligence and willful or intentional wrong. Central of Ga. Ry. Co. v. Ellison, 199 Ala. 571, 75 So. 159; Glass v. Memphis & Charleston R. R. Co., 94 Ala. 588, 10 So. 215; Nave v. A. G. S. R. R. Co., 96 Ala. 267, 11 So. 391.

We are here confined, by the averments of the fourth count of the complaint, to a consideration of whether the evidence in this cause affords an inference that the defendant's engineer acted or omitted to act with the purpose, design, or intention of inflicting injury on plaintiff's intestate, and to this end it is not enough that he inadvertently failed to do something that would have averted the injury, or, by the exercise of greater diligence, could have sooner discovered that the object which he saw on the track was a person.

There is no question as to the equipment of the train with proper facilities for lighting the track ahead of the train, for giving warning of its approach, or for checking its speed and stopping it. The evidence shows that the catastrophe occurred at 10 o'clock at night in a country district where the track was straight and the view unobstructed for a distance of one-half mile, that the train was moving forward from 25 to 30 miles per hour,

and that the deceased was stricken about halfway of this straight stretch of track. The testimony of the engineer goes to show that the body of the deceased was prone upon the track between the rails, but nearer to the left rail; that he discovered the object which he thought was a white paper, soon after the train rounded the curve approaching the straight stretch of track, but did not discover that the object was a human being until the locomotive was within 250 feet of it. On making this discovery, he immediately sanded the track, put the brakes into emergency, and reversed his engine, but was unable to stop until the engine and six cars passed over the deceased inflicting injuries from which he died; that he did not ring the bell or blow the whistle, because he could not do this and do the other things he thought necessary to bring the train to a stop; that the fireman was then engaged in firing the locomotive, and the engineer did not tell him to ring the bell. This witness further testified that he could see the object by the rays of the headlight for 200 yards or more; that from the light shed by these rays he could not tell that the object was a person when within 100 yards of it.

After the train came to a stop, the deceased was found under the seventh car, one of his limbs was severed, and several injuries were found on his head and body, but the lower limbs were not broken. He was picked up and carried on the train to Seale, the nearest station, and a physician called, and the trainmen and the physician started with the intestate aboard the caboose with only the engine attached, to Columbus, Ga., but intestate died on the way. There was also some evidence that the deceased had been seen with a bottle of liquor and was seen to take a drink, though there was evidence to the effect that deceased had not been drinking.

The plaintiff offered as a witness one Kite, who testified that he was with the deceased going toward his home, but they separated shortly before the train arrived at the point of the accident, the deceased continuing to walk down the track; that the witness stopped and was standing by the track as the train passed; that he saw the deceased from the rays of the headlight, either stooping over or crumpled down between the rails, and at this time deceased was 200 yards ahead of the engine; that the brakes were not applied until the deceased was stricken; that though the train afterwards stopped, he did not go to the place of the accident, but went on his way. The plaintiff also offered evidence tending to show that deceased could have been seen a greater distance ahead of the train than testified to by the engineer. The plaintiff also offered evidence to the effect that the engineer Carter stated to the physician at Seale that when he first saw the object he thought it was a piece of paper or a dog. However,

this statement of the engineer, if made, was not of the res gestœ and was only admissible to impeaching the testimony of the witness Carter, after proper predicate had been laid for that purpose. Southern R. Co. v. Smith, 177 Ala. 367, 58 So. 429.

Taking the evidence as a whole, while it may have justified the submission of the case to the jury on the negligence count, a question not now presented, there is nothing in the evidence to warrant a finding that the injury was willfully and intentionally inflicted. Southern R. Co. v. Smith, 173 Ala. 697, 55 So. 913. The facts stated in the opinion of the court in Southern R. Co. v. Shelton, Adm'r, 136 Ala. 191, 34 So. 194, as well as the issues here presented, clearly differentiate that case from this.

For the error committed in refusing the affirmative charge as to count 4, the judgment of the circuit court must be reversed.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.