8 So.2d 580

**COUCH et al. v. HUTCHERSON.**

**6 Div. 968.**

Supreme Court of Alabama.

June 5, 1942.

48

London & Yancey, Geo. W. Yancey, and Fred G. Koenig, Sr., all of Birmingham, for appellants.

Curtis & Maddox, of Jasper, and J. C. Milner, of Vernon, for appellee.

FOSTER, Justice.

There are two questions in this case of primary importance. Both are involved in the affirmative charge requested for appellant. One question is whether there is sufficient evidence to support a charge of wilfully or wantonly causing the death of plaintiff's intestate, and the other is whether plaintiff should have proceeded under the Workman's Compensation Law, Code 1940, Tit. 26, § 253 et seq., on the theory that his intestate was an employee of appellant and that he suffered death by an accident arising out of and in the course of his employment. There are other collateral questions to which we will refer.

Appellant was a road contractor engaged on a section of road near Vernon, Alabama, and was sending supplies and material to the project from Sulligent, some ten or eleven miles from the work. On the morning in which intestate was injured, a truck loaded with hot asphalt was about to leave Sulligent for the location of the work. The truck and load was said by appellant's truck driver to weigh 11,500 pounds. The plaintiff's evidence tended to show that before leaving Sulligent he pulled up to a filling station, where there were present a foreman of appellant and others disinterested. That this foreman said he needed a man to flag on the job. Intestate was near and was called. He was seventeen years old and was just out of school in July 1939. He had not done much work, and no hard labor. He was told by the foreman to get on the truck, and according to plaintiff's evidence if they did not have a flagman when he reached there, they would put him to work. The foreman testified that there was no condition attached to his employment. He did get on the truck and went to work, and received his injuries as he reached there. He was carried to a hospital and died. After his injury he was put on the payroll, and appellant's compensation carrier shared the cost of the injury and funeral with a burial insurance carrier.

Appellant was under the Workman's Compensation Law of Alabama. The question of whether intestate had been employed by appellant was a jury question and properly left to the jury by the court. Under one aspect of the evidence, his status of employment was based upon a condition, and the time of its fulfillment was never reached. True, it is without dispute that no flagman had been employed and he doubtless would have been put to work had he not received the injury, but that circumstance occurred before it was ascertained that the place was open and before his employment became fixed, according to one aspect of the evidence.

So that we have no difficulty in reaching the conclusion that the issue of his employment was one for the jury and their verdict was fully justified by the evidence.

We will therefore now discuss the question of whether the evidence justified a finding of willful or wanton injury and death. There is no question raised as to the sufficiency of count 6. We assume the plaintiff limited the claim to willful or wanton injury and death in recognition of our guest statute. Code of 1940, Title 36, section 95.

The truck was driven with intestate on the seat with the driver some ten miles without incident. It then approached a hill in the road and turned its crest to go down to the works at the bottom of it. That distance is estimated by different witnesses as from six hundred to two thousand feet. There was evidence that as he went over the crest of the hill he was travelling between forty-five and fifty, maybe fifty-five, miles an hour. Other witnesses placed it at about twenty-five or thirty miles.

Appellant's driver of the truck testified that when he went over the hill he applied the brakes and they failed to work, and that he so told intestate; that he tried changing the gear; it was in fourth and he succeeded in getting it in third, and then threw the clutch and took it out of third and tried to get it in second or first; that to do it it was necessary to speed the motor which he did and tried every way to get it in second or first, but could not do so, but did get it back in third. And there being such a heavy load and down a steep hill with no brakes, the truck rushed down at a very fast speed; that if his brakes had worked, he could have stopped without accident. The road as he went down the hill had received the asphalt surface. At the bottom was a fleet of trucks full of slag which had come from Sulligent that morning and stopped with its right wheels on the bank and left on the hard surface turned and headed back toward Sulligent. On the left of the road and across from the slag trucks there was parked another asphalt loaded truck. At this place men were present getting

ready to work on the job, and the space in the road unoccupied by the parked trucks did not permit free passage of the truck in which intestate was riding. There was a fill there and a culvert with concrete abutments. That was the view of the truck driver as he turned the crest of the hill and started down, and when, he testified, he found for the first time his brakes would not work. And that he told the boy to jump, but he did not. And as he approached the parked trucks he again told the boy to jump, and then he headed the truck to the left down the enbankment and jumped off. The boy then jumped, but was hit by something—the concrete abutment or side of the truck.

There was evidence of regular inspections of this truck before that day; that in going to Sulligent sometime before at Greensboro, report was made of needed brake repair, which was made as the evidence tended to show, and no other trouble reported. Appellant had a repair truck, expert mechanics and appliances available on the job to inspect and repair all defects on the trucks. Nothing had been observed about this one that showed a brake defect, except at Greensboro.

There was evidence of Mrs. Allen who lived on the right side of the road going down this hill. She said that her house was down from the crest of the hill around three hundred feet, or less, she was uncertain; that down toward her house on the right of the road there is a bank which gradually gets smaller and when it gets to her driveway the road is on a little incline. Another witness testified: "He (the driver of the truck) looked like he was aiming to stop and slowed down right smart at Mrs. Allen's house and then turned loose all at once and came flying down the hill."

When the driver of the truck (Prince) was being cross-examined, a predicate was laid to him as follows: "State whether or not at about noon on the day of the accident and after it had occurred you went into a restaurant run by Mrs. Wallace Donaldson on Front Street in the town of Sulligent, Alabama, and in conversation with her in the presence of Leburn Howell and others told her you were sorry about this accident and that you had no brakes on the truck." After objection was overruled, and exception reserved, the witness answered that he did not.

On rebuttal, plaintiff offered Leburn Howell and Mrs. Donaldson, separately and over objection and exception proved that on the occasion named in the predicate they heard Prince say "that he was sorry of the accident, he didn't know why they put him on this truck, it had no brakes and he had notified the boss of this in the town before they came to Sulligent."

Appellant contends that there was error in overruling the objection, because it seeks to impeach the witness on an immaterial issue, and because it was a statement made post rem by an agent as to an occurrence when in making it the agent was not engaged in his duties as such agent in that connection, and because the evidence is materially different from the question laid as a predicate.

■ We think the objection was well taken. The predicate did not include the statement, "he didn't know why they put him on the truck * * * that he notified the boss of this in the town before they came to Sulligent." To impeach a witness by showing contradictory statements, the statement must be called to his attention in substantially the form as made to the impeaching witness. McClellan v. Lyle-Taylor Grain Co., 205 Ala. 59, 87 So. 596; Murph v. State, 153 Ala. 67, 45 So. 208; Bridges v. State, 225 Ala. 81(12), 142 So. 56; Pittman v. Calhoun, 231 Ala. 460(7), 165 So. 391; Holmes v. Holmes, 212 Ala. 597(10), 103 So. 884.

■ Appellant also contends that the matter inquired about was immaterial and therefore cannot be used as impeaching. While the predicate as laid may not have been substantially as proved by the impeaching witnesses, we cannot agree that the evidence of the impeaching witnesses related to immaterial matter. The knowledge of the driver of the truck, who was the witness sought to be impeached, that the brakes were out when he started down the hill was one of the most material circumstances upon the question of his wantonness. But if it was not admissible for impeachment, was it admissible for any other relevant purpose?

■ Appellant invokes the general rule that when it is not a part of the res gestae, a statement made by an agent not in connection with the occurrence of the transaction to which he was referring, and not in the scope of his authority, is not admissible as evidence against the principal ex-

cept for the purpose of impeaching the witness on proper predicate. 9 Ala.Dig., Evidence, p. 117, ⊗123(11); Louisville & N. R. R. Co. v. Carl, 91 Ala. 271, 9 So. 334; Southern Ry. Co. v. Fricks, 196 Ala. 61, 71 So. 701; Bradley v. Lewis, 211 Ala. 264, 100 So. 324; Southern Ry. v. Smith, 177 Ala. 367, 58 So. 429; Central of Georgia Ry. Co. v. Corbitt, 218 Ala. 410, 118 So. 755; Teague v. Alabama Coca-Cola Bottling Co., 209 Ala. 205, 95 So. 883; Snyder Cigar & Tobacco Co. v. Stutts, 214 Ala. 132, 107 So. 73; Woods v. Franklin, 151 Miss. 635, 118 So. 450; Am.Law Inst. Restatement of Agency section 286.

But there is another important legal aspect of this question. The rule is stated by some authorities to be that "the existence or absence of knowledge may be shown by declarations of the person whose knowledge is of importance even though such declarations were made a considerable time before or after the time involved." 22 Corpus Juris 284, section 302, page 280, section 289; 31 Corpus Juris Secundum, Evidence, p. 1009, § 257 and § 255; applicable to post rem statements of an agent. 22 Corpus Juris page 382, notes 55 and 56; 31 C.J.S., Evidence, § 348.

In the notes to 131 Am.St.Rep. 315, it is observed that a post rem statement by an agent "not for the purpose of showing negligence but only for the purpose of showing or tending to show knowledge" is admissible. Most of the cases cited do not seem to be apt, and none directly support the text in authoritative statement, so far as our investigation shows. That note is cited as the basis of a text to a 'ike effect in 1 R.C.L. 510, note 7, and 20 Amer.Jur. 491, section 584, notes 19, page 511, section 599, note 20; see, also, The Chanberlayne Trial Evidence by Tompkins, page 497, "Mental State".

Those authorities and the Corpus Juris references, supra, are cited and approved in some cases on all fours with the instant case, where such post rem statements were held admissible though not made in the scope of the agency, and at a time not too remote after the occurrence. Garnett v. S. S. Kresge Co., Mo.App., 85 S.W.2d 157 (2), 159; Wainwright v. Westborough Country Club, Mo.App., 45 S.W.2d 86(12); Yazoo City v. Loggins, 145 Miss. 793, 110 So. 833(3); Jones v. Raney Chevrolet Co., 217 N.C. 693, 9 S.E.2d 395(4); Yarbrough v. Wisconsin Lumber Co., Mo.App., 211 S. W. 713, 714; Fisher v. Pullman Co., 212 Mo.App. 280, 254 S.W. 114; Tannahill v. Depositors' Oil & Gas Co., 110 Kan. 254, 203 P. 909; Palacine Oil Co. v. Philpot, 144 Okl. 123, 289 P. 281.

It is apparent that the cases cited last above did not make an analysis of the question, but without elaboration simply accepted the statements made in the text of the authorities which we have cited. But is there any inherent difference in principle between a post rem statement as to a physical fact and such a statement as to a mental state? They are both subject to the same analysis from a legal standpoint,—absence of authority in that respect; no opportunity to cross-examine as to his exact meaning; possible misunderstanding of what he said; likelihood of failure to recall his exact words; not a party to the suit; retrospection and deliberation as a possible cause for it.

In our case of Central of Georgia Ry. Co. v. Corbitt, 218 Ala. 410, 118 So. 755, 757, the question was the admissibility of a post rem statement of an engineer whose employer was charged with the willful or intentional killing of a person, and the plaintiff offered evidence that the engineer stated "that when he first saw the object [on the track] he thought it was a piece of paper or a dog." The court held that because it was not a part of the res gestae, it was admissible only for the purpose of impeachment. His knowledge of the danger was the important question, and when he first saw the object was relevant, as well as what he thought it was. The court drew no distinction between such a statement and one relating to the physical conditions and actual occurrences. That case cited Southern Ry. Co. v. Smith, 177 Ala. 367, 58 So. 429, 430. In it the plaintiff proved a post rem statement by the engineer on a train which killed a child on the track that "he kept thinking the child would get off the track until after it was too late." The court observed that it was not admissible except for impeaching purposes.

And in Mobile L. & R. R. Co. v. Baker, 158 Ala. 491, 48 So. 119, the suit was for personal injuries to the plaintiff on the track by a street car. A witness was asked whether the motorman made a post rem statement in substance that his head was hanging down and he never saw us. The court held that being a declaration of the agent not a part of the res gestae, it should

not have been admitted. Yet it related his state of mind. Seeing is a mental state, we think.

And in Alabama G. S. R. R. Co. v. Hawk, 72 Ala. 112, 47 Am.Rep. 403, there was an action for personal injuries by a passenger, in which a witness for plaintiff testified that a few minutes after the accident the conductor asked the engineer why he did not respond to the bell-call, and the engineer said that he did respond to all the bell-calls he heard. Held that it was not admissible, because not a part of the res gestae. What is the difference, we inquire, between saying he never heard the bell-call, and saying he did not know there was a bell-call? Hearing and seeing are for the purpose of acquiring knowledge.

We are not willing now to declare a difference without what we think is a distinction because other authorities have done so following a statement in some text-books which do not analyze the situation. We have adhered so persistently to the principle without making any difference because the statement showed a "mental state" of the declarant, we think it would upset our well settled procedure.

The question has been considered in some cases in other states as we have here done. See Rossberg v. Montgomery Ward & Co., 110 Mont. 154, 99 P.2d 979, 982, 986; Adamson v. Allende, 178 Okl. 464, 62 P.2d 1229, 1232; 76 A.L.R. 1125, et seq.; Cyborowski v. Kinsman Transit Co., 6 Cir., 179 F. 440.

We do not think the ruling of the court as to this evidence can be sustained without upsetting our cases.

But for another trial we will discuss the question of the affirmative charge on the basis of such evidence being properly presented for impeachment purposes.

If the declaration in question is admissible either to impeach this witness, or as independent evidence conflicting with his testimony in which he denied notice that the brakes on the truck were out, a jury question was raised on that issue. If the jury should find from the evidence that Prince, the truck driver, had notice of such defect, there was in our opinion sufficient other evidence to carry to the jury the question of wantonness on that occasion.

Wantonness requires knowledge by Prince of the peril to decedent and of the probable consequences of his conduct and that with reckless disregard of such consequences, he pursued that conduct which proximately caused the death of decedent, though he had no intention to inflict injury. Birmingham R. & E. Co. v. Bowers, 110 Ala. 328, 331, 20 So. 345; Central of Georgia Ry. Co. v. Corbitt, 218 Ala. 410, 118 So. 755; Porterfield v. Life & Casualty Co., 242 Ala. 102, 5 So.2d 71.

The jury could find that such peril was manifest to Prince if he started down that hill with that heavy load without brakes when there was an obstruction of the road at the base of the hill, and a fill there of some six feet, all of which they could find was known to him when he started down; that his going on down under those circumstances was a reckless disregard for the safety of his passenger; whereas it was in his power not to have started down the hill under those circumstances, but to have turned off the road on the top of the hill where it was not on a fill, or even further down at about the driveway of Mrs. Allen, when the road was on only a slight incline.

The trial judge clearly and accurately defined the issue in this way to the jury, so they could make no mistake about it. They must have understood it as thus defined. On this theory we do not think appellant was due the affirmative charge or that the verdict should have been set aside on motion.

### Assignment of Error No. 18.

This is based on the refusal of an "unavoidable accident" charge. Its refusal was not in our opinion reversible error. The only count was on a willfull or wanton claim. The court instructed the jury as to the meaning of this claim; and that to entitle plaintiff to recover there must be either a willful or a wanton injury causing death, clearly and correctly defining them. It could be neither if it was an unavoidable accident. So that the court charged the jury the substance of an unavoidable accident theory, though it was done indirectly. A party has no right to secure a reversal for the refusal of a charge when its words express the same thought already given the jury in effect. A party has no right to have certain words used, though they may be correct, if the jury is otherwise made to understand the principle in its true sense.

The case of Kelly v. Hanwick, 228 Ala. 336(9), 153 So. 269, correctly expresses our views. The older cases cited are no longer authority, if not distinguishable. Alabama Produce Co. v. Smith, 224 Ala. 688, 141 So. 674.

This conclusion does not conflict with the idea that when it is pertinent to the issues and the evidence it may be given without error. Johnson v. Louisville & N. R. R. Co., 240 Ala. 219, 198 So. 350.

> Assignment of Error No. 26.

This is a refused charge excluding compensatory damages from the recovery. There was no such claim made in the complaint or shown by the evidence. There was no reversible error in its refusal, under such circumstances. Newton v. Altman, 227 Ala. 465, 150 So. 698; Lehigh Portland Cement Co. v. Donaldson, 231 Ala. 242, 164 So. 97.

We have considered the other assignments of error argued by counsel, but either because they relate to matter included in the court's oral charge or to matter which we have discussed, or because they are obviously not well taken, no reversible error is apparent. We do not think it would be useful for any purpose to discuss them.

For the error which he have pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.

GARDNER, C. J., and BOULDIN and LIVINGSTON, JJ., concur.