## ADAMSON v. ALLENDE, Adm'r.

No. 26627. Oct. 27, 1936.

Rehearing Denied Dec. 8, 1936.
Application for Leave to File Second Petition for Rehearing Denied Dec. 22, 1936.

Poe, Lundy & Morgan and John H. Poe, for plaintiff in error.

O. H. Searcy and J. B. Underwood, for defendant in error.

BUSBY, J. Crescenciano Lopez was, prior to his death, a miner. He was employed by Henry Adamson, doing business as Henry Adamson Coal & Mining Company. On the 9th day of May, 1928, he was killed in a mine accident. A slab of rock weighing about a ton fell from the roof of the mine, crushed Lopez and caused his death.

On the 4th day of March, 1929, this action

was commenced in the district court of Tulsa county by one H. Valdez, as administrator of the estate of Crescenciano Lopez, as plaintiff, against Henry Adamson, as defendant. Plaintiff sought to recover the sum of $75,000 damages on the theory that the death of Lopez was the direct and proximate result of the asserted negligence on the part of the defendant.

While the action was pending there was a change of administrators and J. H. Allende, as administrator, was substituted as party plaintiff.

Issues were joined by appropriate pleadings and the cause was tried to a jury, resulting in a verdict and judgment in favor of the plaintiff for the sum of $4,750. The case was then brought to this court for review. Our decision reversing and remanding the cause for a new trial is reported under the style of Adamson v. Allende, Adm'r, in 170 Okla. 154, 38 P. (2d) 917. Our decision became final and the mandate was issued. On March 20, 1935, the case was again tried in the district court resulting in a verdict and judgment in favor of the plaintiff for the sum of $6,000. Motion for new trial was filed and overruled. The case is again presented to this court for review.

The issues as presented by the pleadings on the second trial were the same as in the first trial. In most respects the facts as developed by the evidence were the same. The theory of the plaintiff's case, as delineated by the amended petition, is set forth in our former opinion, which also contains a summary of the fact situation presented. We shall not in this opinion reiterate or supplement the matters therein stated except in so far as restatement or the recognition of additional facts is required for a consideration of the legal questions herein presented. We shall refer to the parties, when not otherwise designated, in the order of their appearance before the trial court.

The first complaint of the defendant is that testimony was "admitted over the objection of defendant with respect to the fire boss which was incompetent, prejudicial, and constituted manifest error." Under this, his first proposition, the defendant presents more than one phase of the evidence which he asserts to be objectionable. Since each of such phases of the evidence raises a different legal question, each must be treated separately.

We shall first consider a post rem statement made by the fire boss of the mine, who was defendant's agent, which statement was admitted in evidence over the objection of the defendant.

Dave Lozano was the fire boss of the mine. According to the evidence introduced by the plaintiff, he made an inadequate inspection of the slab of rock which fell on Lopez a very short time before the fatal accident. He was in the immediate vicinity of the accident at the time it happened. It took about 15 minutes to remove the body of Lopez from underneath the rock. Some 20 or 30 minutes after the body had been removed, Dave Lozano, according to the plaintiff's evidence, stated, "I didn't know it (referring to the rock) was so bad." There is some confusion in the evidence as to whether this statement was made once to two different witnesses, or twice in the presence of separate witnesses. The defendant in his brief takes the position that only one statement was testified to by plaintiff's witnesses and asserts that the witnesses disagreed upon the place. On this point we shall assume defendant's interpretation of the evidence to be correct. Both witnesses fixed the place in close proximity to the mine. The disagreement, if any, in the precise place where the statement was made affected only the weight of their testimony, a matter which was a proper subject of consideration by the jury. The discrepancy in fixing the place where the statement was made has no relation to the competency of the testimony offered and admitted, which question we must determine upon other considerations.

The statement as attributed to Dave Lozano in the language asserted to have been used by him is susceptible of an interpretation from which it may be inferred that, although he did not know the rock was bad enough to fall, he knew from his inspection and prior examination that it was bad. It was, however, a post rem statement of an agent or servant of a party to this litigation. It was admitted in evidence at two stages of the trial, first, as a part of plaintiff's evidence in chief, and, second, as a part of plaintiff's rebuttal after the declarant, Dave Lozano, had taken the stand as a witness for the defendant and testified to a state of facts contrary to the statement made. As a part of the cross-examination a predicate was properly laid for the introduction of the statement for impeachment purposes to show declarations made out of court contrary to the testimony of the witness given in court.

The defendant urges and the plaintiff concedes that this statement was too far removed in point of time and by virtue of intervening occurrences to be properly admis-

sible as a spontaneous declaration or a part of the res gestae. The defendant also urges that the declarations of an agent or servant who has no power or authority, express or implied, to act for his principal in making such declarations are not properly admissible in evidence in an action against the principal by a third person. The plaintiff concedes that as a general proposition this view of the law is correct, but urges that there are certain definite exceptions which should control in this case. It is admitted by the plaintiff that such unauthorized statements are not competent for the purpose of proving primary negligence, but it is urged that they may be introduced for the limited purpose of establishing the agent's prior knowledge of a pre-existing dangerous condition, thus imputing such knowledge to the principal. This view of the law seems to be sustained in the case of Palacine Oil Co. v. Philpot, 144 Okla. 123, 289 P. 281.

Personally, the writer of this opinion entertains grave doubts concerning the soundness of the rule of law as stated in the 6th paragraph of the syllabus and the corresponding portion of the opinion therein. An examination of the authorities therein cited in support of the rule and of the authorities upon which the cited cases are based, discloses that the basic authorities are in most instances cases in which the declarations of the agents having authority, express or implied, to make such declarations, were admitted in evidence, that is, the declarations introduced were made in the course of employment and within the scope of the authority of the agent making them. The question of knowledge of an agent which may be imputed to his principal is a question of fact. If the unauthorized post rem narrative of an agent concerning other narrated facts is inadmissible in evidence, I am unable to perceive any logical reason for the creation of an exception concerning the fact of knowledge. Nor am I able to find such a reason advanced in the adjudicated cases. In either event, the party affected is deprived of the right of cross-examination and there is no greater guaranty of truthfulness in one instance than in the other. See annotations in 101 A. L. R. 1197; 76 A. L. R. 1122; 42 L. R. A. (N. S.) 917; 1 R. C. L. 510, par. 50; 131 A. S. R. 315; Wigmore on Evidence (2d Ed.) par. 1078, page 585.

In this case, however, it is unnecessary to discuss the question further for the reason that the defendant did not properly preserve the error, if any, for review. Assuming, without deciding, that the post rem statement as made by the agent was not properly admissible as a part of plaintiff's case in chief, it did become admissible for impeachment purposes after the fire boss, Dave Lozano, had taken the stand and testified to a state of facts which was inconsistent with the statement asserted to have been made out of court by him. The statement was thus properly admitted in evidence for one purpose, namely, that of impeachment. It is true the trial court did not in its instruction to the jury limit the consideration of the statement as offered and introduced to that purpose, but no such instruction was requested. Under the law of this state, the failure of the trial court to limit the consideration of the evidence to a particular purpose when it is properly cognizable for only one purpose, does not constitute reversible error, unless an instruction restricting the consideration of the evidence is requested by the complaining party and rejected by the trial court. The precise question was decided by this court in the case of A., T. & S. F. Ry. Co. v. Baker, 37 Okla. 48, 130 P. 577. The applicable rule of law was recognized in paragraph 1 of the syllabus, which reads:

"Where evidence incompetent in chief is erroneously admitted, but later the same evidence becomes competent for the purpose of contradicting the witness, and is properly admitted for that purpose, it would have been the duty of the court upon request so to do, to have limited the effect of the evidence within its proper scope; but if no such request is made, nor is the court's attention called to this phase of the matter, it will be considered as waived."

Upon application of the rule as stated to the case at bar, we conclude that the admission in evidence of the post rem statement of the agent, Dave Lozano, did not constitute reversible error by reason of its competency for impeachment purposes. Incidentally, it is suggested by the defendant that the impeachment upon this point is improper for the asserted reason that it was an impeachment upon an immaterial matter. After a careful examination of the testimony of Dave Lozano, considered in connection with the issues in this case, we are unable to indorse this suggestion as correct.

In the first trial of this case the plaintiff introduced evidence tending to show that the fire boss frequently and habitually used intoxicating liquor, as a consequence of which he could not always perform his duties. Our prior reversal of this case was by reason of the failure of the plaintiff to connect this evidence with the "particular acts of the fire boss in relation to the death

of the deceased." Adamson v. Allende, Adm'r, supra. In the retrial of the case which we are now reviewing, similar evidence was introduced. The defendant again complains of the introduction of this evidence. However, an examination of the record discloses that in addition to the challenged evidence and supplementing the same, the plaintiff introduced evidence tending to show that at the time the fire boss "inspected" the slab of rock which soon thereafter fell on the deceased, he, the fire boss, was under the influence of intoxicating liquor, which was indicated by the odor of his breath, his appearance, and general conduct.

By our former decision, which is now the law of the case, we held this connecting evidence to be necessary. The requirement was met in the retrial of the case, and as a consequence the admission of the evidence thus connected with the fatal accident does not constitute reversible error. Counsel for the defendant say in their brief that the connecting evidence thus produced shows a "studied effort" on the part of counsel for the plaintiff to meet the requirements of our former opinion. So long as the evidence thus produced was not false, and we find nothing in the record upon which we can conclusively presume that it was, the production of the evidence is not subject to criticism. In fact, counsel are to be commended for making a sufficient study of the law announced in our previous opinion to enable them to meet the requirements thereof.

In the trial of this case a miner by the name of Moreno was placed upon the stand as a witness for the plaintiff. He testified, among other things, in substance, that the method used in mines to determine whether there is loose rock which might fall is to tap such rock with a pick in one hand and at the same time place the other hand on the rock; that a difference in loose rock and rock that is firmly attached is revealed by the difference in vibration or jar. Another miner by the name of Zamariba testified that he was present at the time the fire boss purported to make an inspection of the rock which was the cause of the fatal accident in this case, and observed what the fire boss did on that occasion. He testified that the fire boss, Lozano, tapped the rock, but did not place his hand thereon. The manifest purpose of this testimony was to establish a failure on the part of the defendant, acting through his agent and servant, to take proper precautions to determine the safety of the mine in which deceased and others

worked. Complaint is made of the action of the trial court in admitting this evidence. It is asserted by the defendant that, "If it is proper to allow a miner to impeach the general competency of a person selected by the mining board by giving his idea of making tests, then the mineowner is helpless." We are of the opinion that counsel misapprehend the precise purpose of this evidence. This evidence was not introduced for the purpose of establishing general incompetency of the fire boss. In fact, it did not touch upon his general competency at all. It did tend to show that on this particular occasion the fire boss did not make a proper inspection. Unquestionably, the witness Zamariba was entitled to state what he actually saw; he was entitled to describe how the fire boss inspected the rock from his actual observation of such inspection. Moreno, who described how such inspections were made, was an experienced miner. He was familiar with the method used to make such an inspection, and we perceive no sound reason why he should be barred, as a matter of law, from stating the method to the jury. In fact, the defendant does not seriously contend that the method of inspection as delineated by this witness was incorrect in any particular. It is to be observed that the witness did not undertake to assert that he himself was qualified to make such an inspection or to state as a conclusion the condition of the rock based upon an inspection made by him. If such testimony had been offered, a different legal question would, of course, be involved.

Counsel cite in connection with this point the case of Folsom-Morris Coal Mining Co. v. Scott, 107 Okla. 178, 231 P. 512. An examination of that decision discloses that it does not deal with the point here involved. It follows from what we have said concerning the admission of evidence in this case that the trial court did not commit reversible error in its rulings thereon.

It is next urged by the defendant that "there is no evidence to show that the defendant or any of his employees was guilty of any negligence which was the proximate cause of the death of Lopez." In the case of Rock Island Coal Mining Co. v. Davis, 44 Okla. 412, 144 P. 600, this court announced the following doctrine with reference to the duty of a mine owner to provide a reasonably safe place in which his employees might perform their work. We said in paragraph one of the syllabus:

"It is the duty of a mineowner to exercise ordinary care to provide a reasonably safe

place in which his employee may perform his work, and he must use diligence to keep this place in a reasonably safe condition, and the diligence must be commensurate with the character of the services required and with the dangers a prudent man would apprehend under the circumstances of each particular case, and he is liable for any injury resulting from a failure to exercise such care; and it is the duty of an employee to exercise that degree of care which is commensurate with the character of his occupation, and that a reasonably prudent person would use under like circumstances to protect himself from injury."

This duty is not only established by judicial precedent, but it has received the attention of the legislative branch of our government, which has provided statutory requirements to guide and govern mineowners in the performance of the duty. See sections 11222 and 11227, O. S. 1931. The evidence of the plaintiff, as produced in this case and as reviewed in this opinion and in our prior opinion on the former appeal, is sufficient to support the view that the fire boss, while in a state of partial intoxication, made an inadequate inspection of the rock before the time of the accident. A few minutes after this rock was inspected it fell, killing Lopez. Unquestionably it was in a dangerous condition at the time of the inspection, at least such is the reasonable inference. A proper inspection might well have detected the dangerous condition and saved a life. Such an inspection was not made, according to the plaintiff's testimony, which was evidently given credence by the jury. The evidence was sufficient to support the view taken by the jury that the mineowner failed to exercise proper care in providing a safe place for the miners to work.

The defendant next complains that the instructions by which the issues were submitted to the jury were misleading and conflicting. Our attention is called to that portion of instruction No. 11 which reads as follows:

"You are instructed that under the plaintiff's testimony in this case **the only act of negligence complained of is that the fire boss of the defendant either knew, or should by the exercise of reasonable care have known,** that the place where the deceased is claimed by plaintiff to have been working on the morning of the 9th day of May, 1928, was an unsafe and unfit place to work."

The defendant asserts that the emphasized portion of the above-quoted excerpt from the instruction very definitely limited the issues in the case. He then complains that other instructions of the court authorized the consideration of other matters not within the issues as limited by instruction 11, supra. It is, of course, apparent that if, under the facts in the case, the other instructions did not actually go beyond the issues proper for consideration, they would not be erroneous or prejudicial to the defendant merely because they went beyond the limits prescribed by instruction No. 11. In such a case the only error that would have been committed by the trial court would be in giving instruction No. 11, by which the plaintiff's right of recovery was unduly limited. Such error would be favorable to the defendant and thus a matter of which he could not complain. Our examination of the other instructions, however, convinces us that the defendant's complaint in connection therewith is not sustainable. They define the duty of the defendant with more particularity than does instruction No. 11, but they merely amplify the basis of recovery, the gist of which is stated in instruction No. 11. There may have been a better way of stating the issues presented by the case than that employed by the trial court. However, we are unable to say that error was committed in the method used.

The defendant also asserts that the judgment was excessive. The deceased was a man in the prime of life. His life expectancy was 36 years. He had a daughter, Patricia Lopez, who was six years old when her father was killed. This daughter was entitled to look to her father for support. It was his legal duty to support her. Moreover, there is evidence that he had been discharging or attempting to discharge this duty by sending her articles of clothing and money at irregular but frequent intervals. The daughter was living with her maternal grandparents at Ft. Worth, Tex. It, of course, cannot be definitely ascertained how much the child would have received from her father had he lived. Of necessity there is some uncertainty in connection with that matter. The judgment of the jury, as reflected by their verdict of $6,000, is not so excessive that we can say, as a matter of law, that it was influenced by passion or prejudice, nor can we say that it is not sufficiently supported by the evidence. According to the views herein expressed, the judgment of the trial court is affirmed.

The plaintiff has moved for judgment on the supersedeas bond herein filed in the event of affirmance of the judgment of the trial court. In accord with the established

rule of this court, the motion is sustained. Judgment will be entered accordingly.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. RILEY, J., absent.