Lelon HIGDON, Paul Higdon and C. A. Campbell, Appellees,

v.

Max D. SMITH and Harmon K. Smith, Appellants.

No. 49228.

Court of Appeals of Oklahoma, Division No. 2.

May 3, 1977.

Bishop, Wantland & Wrigley, Seminole, for appellees.

Dudley H. Culp and Robert D. Stewart, Jr., Horsley, Epton & Culp, Wewoka, for appellants.

BRIGHTMIRE, Presiding Judge.

This action was brought by one group of AMPI dairy farmers against another for recovery of damages resulting from the cancellation of three milk base sales contracts. Plaintiffs achieved a jury verdict. From an order overruling a motion for a new trial defendants appeal.

I

August 3, 1970, Max and Harmon Smith transferred 300 pounds of milk base to Lelon Higdon, 200 pounds to Paul Higdon, and 291 pounds to C. A. Campbell, at a price of $10 per pound, for a total of $7,910. The transfers were accomplished at Associated Milk Producers, Incorporated (AMPI) Oklahoma division offices in Oklahoma City by executing standard forms provided by AMPI as required by the association's base plan. Each transfer agreement included a "seller's affidavit" in which the seller swore he would not offer for sale for five years, milk for human consumption in fluid form, and that if he did, the agreement would become void and he would refund the base purchase price to buyers.

Under the AMPI plan each member was allocated a certain amount of so-called milk base—a right to market Class I milk, *i. e.*, milk to be packaged for human drinking and selling for a higher price than Class II milk, a category referring to milk sold for all other uses. Milk base is measured by the pound. Though an AMPI member could sell milk in excess of his base allocation, he had to sell it at the lower price set

for Class II milk sales. Once milk base poundage had been allocated to existing member producers additional pounds could be acquired only by transfer from one member to another as was done in this case.[1]

Almost two months after the base transfers in question AMPI wrote Max and Harmon Smith advising that their transfers to the Higdons and Campbell had been cancelled, because "[i]nformation has been received by this office that John Smith was approved for the sale of 'Grade A' milk, August 7, 1970, and shipments began to Colvert's Dairy, Ardmore, Oklahoma." "This action," continued the letter, "constitutes a violation of the Class I Base Plan and the affidavit of transfer . . . ." resulting in the latter's cancellation effective October 1, 1970. A copy of this letter was sent to plaintiffs.

Lelon Higdon discussed the cancellation shortly afterward by telephone with Harmon Smith, who said he would "get it straightened out." However, he did not and while the transferees did appeal the cancellation to an AMPI committee, it was upheld because on the hearing date, March 11, 1971, ". . . no person representing the appellants appeared. . . ."

## II

In April 1971, the base transferees filed this action against the Smiths. The amended petition stated two causes of action. The first asked for restitution of the $7,910 consideration paid to and retained by defendants, and the second alleged that the breach of contract by defendants had forced plaintiffs to sell their milk at Class II prices resulting in lost profits totaling $6,739.32.

A demurrer to the amended petition claiming plaintiffs' cause of action was based upon an illegal contract was sustained. The order was appealed and the state court of appeals, division one, reversed the ruling and remanded for trial. *Higdon v. Smith*, Okl.App., 44 Okl.B.Ass'n J. 638 (1973).

The case was tried to a jury October 29, 1975. Plaintiffs produced evidence generally substantiating their allegations that: (1) transfer contracts had been entered into among the parties; (2) the base transfers had been cancelled by AMPI; (3) defendants had refused to return the consideration paid by plaintiffs; and (4) plaintiffs had, because of the cancellation, been required to sell the quantity of milk that would have been covered by the base at two dollars less per pound than the Class I price, until December 1971.

Defendants rested without presenting any evidence, and the jury returned a unanimous verdict for plaintiffs on their first cause of action in the amount of $7,910 and on their second in the amount of $3,369.66. Defendants' motion for a new trial was overruled and from that order they appeal.

## III

Defendants assail the judgment on four grounds: (1) the court erroneously admitted the AMPI cancellation letter over their objection; (2) failure of trial court to sustain, sua sponte, a demurrer to plaintiffs' evidence or to direct a verdict for defendants; (3) the jury's province was invaded by one of the instructions given; (4) failure of the trial court to strike plaintiffs' entire second cause of action from plaintiffs' petition— again, sua sponte.

## IV

In their first proposition defendants complain of admitting the above-mentioned cancellation letter on the ground it was "hearsay of the rankest form."

What happened was that plaintiffs offered as evidence a copy of the September 29, 1970 letter through their witness Elmer Anderson, AMPI's current division manager

---

1. The plan does provide for another way of increasing one's base poundage which is immaterial so far as this case is concerned.

in Oklahoma City,[2] who testified that a copy of the letter was kept in his office in the normal course of business, and that when it was mailed, the office records were changed to reflect the cancellation.[3] Defendants' general objection to the letter—that it was "incompetent, irrelevant and immaterial"—was overruled.

■ Whether hearsay or not, the letter was admissible as evidence that defendants received notice of the action taken against them by AMPI, namely, cancellation of the transfer agreements. *Smith v. Munger*, Okl.App., 532 P.2d 1202 (1974). Since it was admissible on at least one ground, the court did not err in overruling defendants' general objection. Once admitted the letter and its contents had general evidentiary value absent a limiting order. Since defendants never requested such an order, the question of the propriety of one never arose. *Wininger v. Day*, Okl., 376 P.2d 211 (1962); *Adamson v. Allende*, 178 Okl. 464, 62 P.2d 1229 (1936).

### V

■ The next suggested error—that the trial court failed on its own motion to dictate into the record and sustain a demurrer to plaintiffs' evidence or to direct a verdict in favor of defendants on the ground that there was insufficient evidence to support the verdict in favor of plaintiffs—like their fourth proposition is so lacking in legal sophistication as to imply total unfamiliarity with very elementary rules of state law. The court has no duty or even a right to try one side of a lawsuit. The statute—12 O.S. 1971 § 577 subd. 3—makes it incumbent upon defendant, not the court, to challenge the sufficiency of his opponent's evidence. And failure of defendant to stand on an overruled demurrer at the close of plaintiffs' case in chief or move for a directed verdict after all the evidence is in is one good way to estop oneself from later on attacking the sufficiency of adversarial evidence. *Richardson v. Butler*, 206 Okl. 79, 240 P.2d 1058 (1952). Since defendants never once objected in any form to the sufficiency of plaintiffs' evidence, their second complaint has to be rejected.

### VI

The third mistake said to have been made is that the court invaded the province of the jury in stating the issues it was to decide by assuming that defendants continued in fact to operate a dairy farm in violation of the transfer agreements.

■ This is not a fair analysis of instruction number two. Before stating our reasons why we cannot find such fault with the instruction, however, we want to commend the trial judge for the rational and comprehensible manner in which he instructed the jury on the issues it was to decide. The instructions given in this case offer a significant improvement over what generally is found in the records reaching this court. Commonly the trial judge simply has his reporter copy the pleadings which he reads to the jury followed by the statement that such allegations provide the issues to be decided by it. In this case the trial judge did not follow such inept practice. His instruction number one was a very short one telling the jurors that it was necessary that they carry out a faithful performance of their duties if justice under the law was to be administered to the parties and that it was their duty to decide the issues in dispute between the parties based on the evidence which had been presented. He also told them that in making their decision they would be the sole judges of the credibility of the evidence and the weight to be given the testimony of each witness.

The form and substance of the second instruction[4] demonstrates that the court

---

**2.** The letter was written by W. L. (Jiggs) Wise, who at that time, was AMPI Oklahoma division's assistant manager. At the time of the trial, Wise was in AMPI's regional office in Dallas, Texas, as regional manager.

**3.** As will be noted later the genuineness of the exhibit had previously been admitted at the request of plaintiffs.

**4.** Instruction number two reads:

carefully analyzed both the pleadings and the evidence presented at the trial and determined the particular factual issues which the jury was to decide.[5]

Returning to defendants' criticism of the second issue, it might be said that, standing alone, it is not entirely clear, not because of the fact that it refers to defendants' operating a dairy farm, but because it does not identify the class of milk intended, namely Class I milk. Such omission, however, could not have misled the jury because Class I milk is what the parties talked about all during the trial and it is the kind of milk issue number one referred to as being the basis for consideration of the transfers. As we understand the facts, the transfer agreements did not prohibit defendants from operating a dairy farm after the transfers but only from trying to sell milk as Class I milk. Presumably, they could sell any amount of Class II milk and not be in violation of the base transfer agreements. Overall, the 11 instructions given were well thought out, short, concise, and couched in language the average juror could understand without significant repetition. After reading this set of instructions, we have to conclude that the jury passing on the issues in this case probably understood what it was to decide better than most juries that are impaneled.

■ Another reason why the instructional argument is without merit is because defendants before trial admitted all of the facts which the jury later found against them. The admissions resulted from a document plaintiffs served on defendants January 23, 1974 entitled "request for admission of genuineness of writings and truth of facts" pursuant to the provisions of 12 O.S. 1971 § 504. The requests were divided into two parts. The first asked for defendants to admit the genuineness of various documents including the AMPI cancellation letter, and the second part sought the admission of 13 separate facts material to plaintiffs' case. Within 20 days thereafter, the attorney for defendants filed what he called an "answer" to the admissions request, not signed or sworn to by defendants as required by law, but simply signed by the attorney. It was very short and read:

"Comes now the defendants, and each of them, and admit the facts as stated in paragraph no. 3 of said request, But as to the other part thereof; 1–2–4–5 and 6, Defendants have no knowledge, except as alleged in Plaintiffs amended petition, and demand proof of same.

"As to part two, of said request; Defendants further answer; that they have no knowledge of same; and therefore demand proof of same;

"/s/ Hubert Hargrave
Attorney for Defendants"

As we said there was no "sworn statement denying specifically the matters of which an admission" was requested "or setting forth in detail the reasons why he cannot truthfully admit or deny those matters," nor were there filed written objections to any of the requests on the grounds that some or all were privileged or irrelevant or that the request was otherwise improper in whole or in part together with a notice of hearing the objections at the earliest practicable time as required by 12 O.S. 1971

---

"The disputed issues for you to decide from your consideration of all the evidence are:

"ISSUE NUMBER ONE: Whether or not the defendants entered into a contract to transfer to the plaintiffs Class I milk base for the consideration of $7,910.00. And for the further consideration and guarantee that no milk would be produced from the dairy farm defendants were operating for human consumption for a period of five years following the transfer.

"ISSUE NUMBER TWO: Whether or not the defendants allowed milk to be sold from the dairy farm defendants were operating within a period of five years following the transfer.

"ISSUE NUMBER THREE: Whether or not plaintiffs lost the Class I milk base transferred to them by defendants as a result of defendants' acts.

"ISSUE NUMBER FOUR: Whether or not plaintiffs, since the cancellation of the Class I milk base in question have been required to sell their milk as Class II milk, as alleged in plaintiff's second cause of action."

5. Of course, as will be discussed shortly, the admissions of defendants probably eliminated the need for any fact finding. It would have been helpful had plaintiffs' counsel brought this to the court's attention.

§ 504. The statute provides that failure to comply with one or both of these specifications operates to achieve this result: "Each of the matters of which an admission is requested shall be deemed admitted . . . ." Consequently the essential elements of plaintiffs' action were admitted.

■ Certainly a party will not be heard to complain of an instruction which is more favorable to him than he is entitled to. *Stagner v. Files*, 182 Okl. 475, 78 P.2d 418 (1938).

### VII

Defendants' last contention is that the court should have stricken plaintiffs' cause of action asking consequential compensation for a breach of contract because in their first cause of action plaintiffs sought restoration damages resulting from a termination of the contract.

■ This is similar to defendants' second argument suggesting that the court ought to have moved for a directed verdict on behalf of defendants. As we said earlier there is no duty resting on the trial court to represent defendants by striking part of a petition sua sponte. And since we cannot find in the record where defendants attacked the second cause of action by either (a) a demurrer or any other pretrial motion, (b) a challenge to proof of damages in support of it, or (c) an objection to instruction number eight authorizing the jury to award damages in connection with it, we are bound to hold they waived whatever objection they may have had to it.

Since defendants have not shown any reversible error, the order overruling their motion for a new trial is affirmed and plaintiffs are granted judgment on the supersedeas bond on file against the surety, United States Fidelity and Guaranty Company, in the amount of the judgment against defendants along with interest and taxable costs.

BACON and NEPTUNE, JJ., concur.