CONSOLIDATED COACH CO., INC., *v.* McCORD.

(*Nashville,* December Term, 1936.)

Opinion filed March 1, 1937.

STRANG, FLETCHER & CARRIGER, of Chattanooga, for plaintiff in error.

S. H. FORD and R. W. KEMMER, both of Chattanooga, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the husband and administrator of Mrs. Ruth McCord to recover damages for her death occasioned by a collision between a motorcycle which she was riding and a bus belonging to the plaintiff in error. There was a verdict and judgment for plaintiff below for $2,950, the amount sued for. The Court of Appeals reversed the judgment below and dismissed the suit, being of opinion that the contributory negligence of the deceased barred any recovery. We have granted petition for *certiorari*.

The accident occurred in the village or settlement of Red Bank, 4 or 5 miles north of Chattanooga, on one of the main highways leading out of that city. The bus was coming into the city from the north. The deceased was just leaving the village on her motorcycle, going toward the north, and there was a head-on collision.

The deceased had ridden up to Red Bank a few min-

utes before and parked her motorcycle in front of one of the stores. She went into the store and transacted some business. Coming out of the store, which was on the west side of the highway, she mounted her motorcycle and started, angling across the highway, toward the northeast. The highway was broad at this point, having four lanes of traffic. Before the deceased got over on to the east side of the highway, her right side going north, the motorcycle and the bus collided near the center of the road. The proof indicates that the driver of the bus pulled somewhat to his left, just before the collision, in order to avoid the same.

The declaration is in two counts. The first count sets out that the place where the accident occurred was on "one of the most publicly used highways in Hamilton County, Tennessee, both sides of the said highway being thickly settled, and being within the limits of the school zone as established by the citizens of said village of Red Bank." The declaration avers that the bus was being operated at the time and place at a dangerously high rate of speed and charges that the bus driver failed to keep a lookout, failed to keep the bus under control, was on the wrong side of the road, that the bus had defective brakes, and perhaps other negligence.

The second count of the declaration charges that at the time and place the bus was being operated in violation of section 1, chapter 82, of the Public Acts of 1931, which provides:

"Be it enacted by the General Assembly of the State of Tennessee, That it shall be unlawful for any person to drive any vehicle upon any road, street or highway carelessly and heedlessly in willful or wanton disregard of the rights or safety of others, and without due cau-

tion and circumspection at a speed and in a manner so as to endanger or be likely to endanger any person or property."

There is considerable conflict in the estimates of the witnesses with respect to the speed at which the bus was traveling, and considerable conflict as to how far in front of the bus the deceased rode out from the shoulder of the road on to the traveled portion of the highway. There are some other conflicts in the evidence which we need not here notice. There is no conflict with respect to the fact that the concrete highway was clear of other vehicles or obstructions at the point of the accident and that the bus driver and the deceased, after she came out on the highway, had a clear view of each other.

Under these circumstances the Court of Appeals concluded that, in running her machine across the highway, in ignorance or disregard of the approaching bus, the deceased was guilty of such contributory negligence as to bar her recovery. We do not find it necessary to consider this question.

As set out above, the declaration charges that the bus was being operated through Red Bank, in the language of the statute, "in a willful or wanton disregard of the rights or safety of others," etc. Plaintiff below introduced proof showing that Red Bank was a thickly settled locality with stores, filling stations, and other business places on each side of the highway; that the settlement was within a school zone, a large school being located nearby; that on either side of Red Bank there were school zone signs on the highway, limiting speed to 20 miles an hour.

Witnesses were introduced by plaintiff below who saw

the accident and estimated the speed of the bus, some at 60 miles an hour, and some at 50 miles an hour. Defendant below introduced a number of witnesses who estimated the speed of the bus at the time of the accident and just before as around 25 miles an hour.

Plaintiff below introduced evidence, which was not contradicted to any extent, going to show that the bus ran over 100 feet after the collision. There were marks on the highway, apparently made by metal portions of the motorcycle scraping on the concrete, at the point of the collision and southward. Measurements were taken from this point to the point where the bus stopped—the front end of the bus. These measurements showed the bus traveled more than 100 feet after the accident.

The body of Mrs. McCord was found on the concrete several feet in front of the bus, as was the motorcycle.

Plaintiff below introduced a witness, formerly employed by the defendant below, who was a bus driver. He handled this particular bus after the accident, when the bus was brought into the city. This witness testified that the brakes and other equipment of the bus were in good condition; that, going at a speed of 25 miles an hour, the bus could have been stopped within its own length, 33 feet; that going at a speed of 50 miles an hour, the bus could have been stopped within 75 feet or less. There is no contradiction whatever of this testimony.

Naturally the driver operating the bus involved in the accident applied the brakes at the time of the collision or just before. Nevertheless the weight of the evidence indicates that the bus ran more than 100 feet after striking the motorcycle.

Such being the proof, it cannot be insisted that there is not very substantial evidence tending to show that this

bus was being driven through Red Bank at a high rate of speed. As stated above, the bus was 33 feet long. It was 8 feet wide and weighed, exclusive of its load, 18,500 pounds.

█ █ As the case presents itself to us, therefore, we are forced to think there was abundant evidence to lead the jury to the conclusion that the bus was being operated through Red Bank in wanton or willful disregard of the rights and safety of others. The accident occurred about noon. The locality was thickly settled; stores and their customers were on either side of the highway; cars and trucks parked there; all within the limits of a school zone with a speed limit of 20 miles an hour. To operate such a vehicle as the bus of plaintiff in error through such a community, in the middle of the day, under the circumstances set out, evinces ''such entire want of care as would raise presumption of conscious indifference to consequences.'' Negligence like this is characterized as wanton negligence in *Stagner* v. *Craig,* 159 Tenn., 511, 19 S. W. (2d), 234, and that case and many others hold that the defense of contributory negligence is not available when the cause of action is based upon wanton negligence. *Fairbanks, Morse & Co.* v. *Gambill,* 142 Tenn., 633, 222 S. W., 5; *Cash* v. *Casey-Hedges Co.,* 139 Tenn., 179, 201 S. W., 347; *Memphis St. Railway Co.* v. *Roe,* 118 Tenn., 601, 102 S. W., 343.

In his charge to the jury, the trial court said this:

''In another count of the declaration it is alleged that at the time this driver was violating the statute of the State of Tennessee, which provides among other things, that it shall be unlawful for any person to drive a motor vehicle upon any road, street or highway carelessly or heedlessly, and in willful or wanton disregard of the

right or safety of others, and without due caution and circumspection at a speed, and in a manner so as to endanger or be likely to endanger any person or property. Now, it is averred that the driver of this bus was violating this statute at the time this accident happened, and that that caused this accident, by which the intestate lost her life there.''

■ ■ We have previously quoted from the declaration. It cannot be successfully argued, therefore, that the matter of wanton negligence was not alleged nor that evidence was not introduced to sustain such allegation, nor that the trial judge failed to submit the question of wanton negligence to the jury.

■ Later in the charge the court below erroneously told the jury that proximate contributory negligence of the deceased would bar her suit. This, of course, was an error, insofar as the case rested on wanton negligence. It was an error, however, in favor of the defendant below, of which it cannot complain.

We find little support in the record for the contention that the deceased was guilty of willful and wanton negligence, even if such negligence could affect the liability of plaintiff in error. The deceased was doubtless heedless, but her conduct at this time does not seem to have involved a conscious hazard of her own safety, or a conscious disregard of the safety of others. Such at least was the tenor of the evidence offered by plaintiff below. The trial judge told the jury that failure by deceased to observe the statute above quoted would have been contributory negligence on her part. The verdict acquitted her of this infraction of law.

Court of Appeals reversed. Circuit court affirmed.