LONG et al. v. TOMLIN et al. (six cases).—125 S. W. (2d) 171.

Middle Section. Dec. 10, 1938.

Petition for Certiorari Denied by Supreme Court, March 4, 1939.

Garner & Richard, of Springfield, and P. H. Duke, of Ashland City, for plaintiffs in error.

Richard Marshall and Elvin Woodroof, both of Nashville, and B. J. Boyd, of Ashland City, for defendants in error.

FAW, P. J. On December 13, 1936, Louise Tomlin, Lois Krantz and Ruby Anderson—all of whom were then under twenty-one years of age—were, while walking along a highway in Cheatham County, struck and injured by an automobile owned by J. E. Long and driven at the time by his son Jimmie Long, then a minor eighteen years of age.

Averring that the personal injuries thus suffered by the aforesaid three young ladies were proximately caused by negligence of Jimmie Long, and that he and his father, J. E. Long, were liable in damages therefor, six separate actions for damages were instituted against J. E. Long and Jimmie Long in the Circuit Court of Cheatham County; that is to say, each of said three young ladies brought a separate action (suing by her father as next friend) for damages on account of injuries to her person, and the father of each of the young ladies brought a separate action to recover for his expenses and loss of services of his said daughter, resulting, he averred, from the negligence of Jimmie Long as aforesaid.

The plaintiffs below in the six separate suits were as follows: (1) John Tomlin, (2) Louise Tomlin, by next friend, etc., (3) D. A. Krantz, (4) Lois Krantz, by next friend, etc., (5) C. H. Anderson, and (6) Ruby Anderson, by next friend, etc.

The defendants were the same in each case, viz: J. E. Long and Jimmie Long. All the parties are residents of Cheatham County, Tennessee.

The six cases were tried together, by consent, in the Circuit Court, and resulted in a judgment for the plaintiff and against the two defendants, in each case, as follows:

For John Tomlin, $750.

For Louise Tomlin, by next friend, etc., $1,000.

For D. A. Krantz, $100.

For Lois Krantz, by next friend, etc., $150.

For C. H. Anderson, $200.

For Ruby Anderson, by next friend, etc., $300.

Each of the plaintiffs below was also awarded a judgment against the two defendants for one-sixth of the costs of the cause.

A lien was declared on each of said judgments for the fees of plaintiffs' attorneys of record.

A separate motion for a new trial on behalf of each of the two defendants was made and overruled, and defendant J. E. Long then filed a motion in arrest of judgment, which was likewise overruled;

whereupon each of the defendants reserved exceptions to the several rulings of the Court adverse to him, and prayed an appeal in the nature of a writ of error to this Court, which appeal was granted by the Trial Court and perfected by each of the defendants.

By order of the Trial Court, made pursuant to an agreement of the parties, the six cases have been brought to this Court in one transcript, with a single bill of exceptions, and docketed and heard here under the style appearing in the caption hereof.

For convenience, we will continue to designate the parties as plaintiffs and defendants according to their respective positions on the record below.

In order that the questions raised by the defendants' assignments of error may be better understood, the issues presented to the Court and jury below will be first stated.

The cause of action of each of the plaintiffs was predicated upon alleged injuries to such plaintiff proximately resulting from the alleged negligent operation by defendant Jimmie Long of the aforesaid automobile owned by defendant J. E. Long. With respect to the alleged negligence of Jimmie Long, and the averments upon which the claimed liability of J. E. Long are predicated, the six declarations are alike, and we quote excerpts from the first count of the declaration of Louise Tomlin, by next friend, etc., as follows:

"On December 13th, 1936, and for a long time prior thereto the defendant J. E. Long was the owner of a certain automobile which was used by him and other members of his family as a family automobile, and especially by the defendant Jimmie Long, and said automobile was on December 13th, 1936, being driven on the Old Clarksville Highway near Abernathy's Store in Cheatham County, Tennessee, by the said Jimmie Long who is a son of the said J. E. Long, and who was driving the same with the knowledge and consent of his father, and as agent for his father and on the business of his said father, the defendant J. E. Long, by the operation of which automobile at said time it became the duty of the defendant Jimmie Long to so operate said automobile as not to endanger, or be likely to endanger the lives of other people lawfully upon and using said highway, and on said date the said Jimmie Long was operating the said automobile with the knowledge and consent of his father, the defendant J. E. Long, and as a family car. While traveling in a southerly direction on said highway the said Jimmie Long was operating said automobile in such a careless, negligent, reckless and heedless manner, being then and there in an intoxicated condition and under the influence of alcohol, by reason of which he ran said automobile against and upon the plaintiff, knocking her down and dragging her some distance, as the result of which the plaintiff was injured severely in her person as follows: (then follows averments with respect to plaintiff's injuries).

"Plaintiff alleges that her injuries have been wrongfully and unlawfully inflicted upon her as the direct and proximate result of the defendant Jimmie Long operating said automobile with the knowledge, consent and permission of his father, the defendant J. E. Long, all without fault or negligence on her part."

In the second count of the declaration, the plaintiff adopts all of the "statements, averments and allegations" of the first count, and then further avers that defendant Jimmie Long violated Section 2681 of the Code of 1932 (as amended), which section is as follows:

"Careless Driving. It shall be unlawful for any person to drive any vehicle upon any road, street or highway carelessly and heedlessly in willful or wanton disregard of the rights or safety of others, and without due caution and circumspection at a speed and in' a manner so as to endanger or be likely to endanger any person or property." Pub. Acts 1931, ch. 82, sec. 1.

To the declaration of each plaintiff the defendants pleaded the general issue—that "they are not guilty of the matters and things in the plaintiffs' declarations alleged."

At the trial below, it appeared from undisputed evidence that the three minor plaintiffs were struck and injured by the automobile of J. E. Long while it was being driven along a highway in Cheatham County by Jimmie Long; but the defendants contended, and sought to prove, that the proximate cause of the injuries to the plaintiffs was not negligence of Jimmie Long, but was negligence of said three minor plaintiffs, or that, if negligence of the minor plaintiffs was not the sole proximate cause of their injuries, they were guilty of negligence which contributed as a proximate cause of their injuries, and that the plaintiffs' actions were, therefore, barred.

With reference to the averment in the several declarations that, at the time the alleged injuries were inflicted upon the plaintiffs, the defendant Jimmie Long was "then and there in' an intoxicated condition and under the influence of alcohol," the Trial Judge charged the jury as follows:

· "While the plaintiffs, by amendment, ·likewise now allege in the first count that Jimmie Long was driving while drunk, ordinarily a statutory offense, their counsel state that they do not insist upon this as a claim of a statutory offense in the first count which would render it a mixed count, but merely include that charge in the common law negligence action as an element to be considered in determining whether or not there was general or common law negligence."

Defendant J. E. Long, for himself, further contended that the automobile which struck the minor plaintiffs, although owned by him and registered in his name, was not (as the plaintiffs averred in their declarations) used by defendant Jimmie Long or other members of J. E. Long's family as a "family automobile," and, at the time of

the collision in question, his said son, the defendant Jimmie Long, was not driving said automobile as his (J. E. Long's) agent and on his business, or with his knowledge and consent.

We have thus undertaken to outline the determinative issues arising on the pleadings and evidence below.

A separate assignment of errors has been filed on behalf of each of the defendants—twenty-eight assignments for defendant J. E. Long (with numerous subdivisions under some of them), and fifteen assignments for defendant Jimmie Long.

It would extend this opinion to an inordinate length and serve no useful purpose to set out herein and discuss each of the assignments of error seriatim.

We will first consider the contention of defendant J. E. Long, made through a series of assignments of error, that there was no evidence to support a verdict against him, and, therefore,' the Trial Judge erred in overruling his motion for a directed verdict at the close of all the evidence, and in overruling his. motion for a new trial on that ground.

Whether it will be necessary to consider the remaining assignments of J. E. Long will depend upon the conclusion reached with respect to the action of the trial court on his motion for a directed verdict.

It appears from the minutes of the trial court, and also from the bill of exceptions, that, at the conclusion of all the evidence, defendant J. E. Long moved the Court to instruct the jury peremptorily to return a verdict in his favor in each and all of the six cases, upon grounds stated ·in writing as follows:

(1) "That the proof fails to show that the car driven by the defendant, Jimmie Long, was being used at the time of the accident either with the knowledge or consent of said defendant."

(2) "Because the proof fails to show that said car was being used upon any busines of the defendant, J. E. Long."

(3) "Because the proof fails to show that· the car was bought by the defendant, J. E. Long, for the use of his family and for a family purpose, and that the car was in such use at the time of the injuries complained of."

(4) "Because there is no evidence upon which the Jury can return a verdict favorable to any of the Plaintiffs against J. E. Long, under the allegation of either or any of the declarations."

(5) "Because there is no evidence upon which a verdict favorable to either or any of the Plaintiffs can be rendered."

With reference to said motion of J. E. Long for a directed verdict, the record recital is as follows:

"Said motion was heard by the Court, when the Court upon consideration of same, was pleased to state and hold that the second ground of said motion was good and is sustained, and that the Court

would so direct the Jury in his general charge to the Jury, but that there was evidence to take the case to the Jury on all the other grounds of the motion, and the Court so held and overruled and disallowed all the other grounds of said motion.

"And the defendant, J. E. Long, excepted to the action of the Court in holding all the other grounds of his said motion not good and in disallowing and overruling the same.

"The plaintiffs except to the action of the Court in holding the second ground of said motion to be good, and in sustaining same, and in announcing that he would so instruct the Jury in his general charge."

However, the learned Trial Judge (for some reason, doubtless satisfactory to himself, but not disclosed by the record) did not charge the jury that the proof failed to show that the car was being used upon any busines of the defendant J. E. Long; but charged the jury (touching that question) as follows:

"When you retire to consider your verdict, you will first determine as to the liability of Jimmie Long in each case. If you find him not guilty in any case that is the end of that case as to him and as to his father also. If you find him liable in any of the cases, you will then determine whether or not the father, J. E. Long, is liable with him in that particular case. Bear in mind that before plaintiff in any case can recover from defendant J. E. Long, it must have been shown by a preponderance of the proof: (1) that Jimmie Long was liable by reason of his negligence in operating the automobile (2) that the father, J. E. Long, owned the automobile (3) that Jimmie Long was driving same as agent of his father or on the latter's business or (4) that the automobile was furnished by the father for the use and pleasure of his family and that Jimmie Long was operating same with the knowledge or consent of the father, express or implied. . . ."

"The family purpose doctrine is applicable only when the head of a family maintains an automobile for the general use, pleasure and convenience of his family, regardless of the size of the family. When an automobile belonging to a father is not so maintained, but a member of the family is required to obtain special permission each time the same is used by him, the doctrine and the consequent liability of the father for an accident would not follow or apply. . . ."

"I charge you that by law, where the ownership of an automobile is shown, that is prima facie evidence that same was being operated and used by the driver at the time of an accident with the knowledge, consent and authority of the owner. This presumption, however, is rebuttable, but the burden is on the owner to show the contrary. . . ."

"I have used in the charge the expression express permission and

implied permission. While the terms explain themselves, at the suggestion of counsel for plaintiffs I charge you that express permission or consent is where one gives another person leave to do a certain thing at a certain time, as where a father expressly gives his son authority to use an automobile at a particular time, that is express permission. Of course implied permission is where a person by his line of conduct, has shown a disposition to permit another person to do a certain thing and raises no objection thereto. In other words, I charge, if you find that Mr. Long, over a period of time, permitted and allowed his son to use his automobile and he made no complaint about it from time to time, then I charge you that would be implied permission for his son to use it whether there was any express permission or not."

The verdict of the jury was returned in writing, and, as thus returned, was received and accepted by the Court as the verdict of the jury, and was entered of record, and is as follows:

"We find that Jimmie Long, son of J. E. Long, did on the 13th of Dec. 1936, drive an automobile, the property of J. E. Long, with the implied consent of his father, J. E. Long, and that he drove said automobile on the old Nashville and Clarksville pike in the second district of Cheatham County, Tennessee, in a reckless and careless manner, as a result of which three girls to-wit: Miss Louise Tomlin, Miss Ruby Anderson and Miss Lois Krantz were struck by said automobile while driven by Jimmie Long by and with the implied consent of his father, J. E. Long, and that said girls were painfully injured by the said automobile when struck by said automobile, due to the careless and reckless driving of said Jimmie Long, and in consideration of which we find that the said three girls and their fathers are entitled to recover damages for said injuries, from the said Jimmie Long and his father, J. E. Long for said injuries in the following amounts:

| | |
|---|---:|
| "Louise Tomlin | $1000.00 |
| John Tomlin | 750.00 |
| Ruby Anderson | 300.00 |
| Charlie Anderson | 200.00 |
| Lois Krantz | 150.00 |
| D. A. Krantz | 100.00 |
| | $2,500.00" |

Immediately following the verdict, supra, and in the same minute entry, the aforesaid judgments of the Circuit Court were entered, and, at the end of the judgments, the record recites that, "To all of which the defendants J. E. Long and Jimmie Long except."

Among other grounds stated in his motion for a new trial, defendant J. E. Long complains of the action of the Trial Court in over-

ruling his motion for a directed verdict, and also asserts that "the finding of fact returned by the jury in the verdict of the jury, does not warrant, in law, the rendition of a judgment in favor of the plaintiffs or either of them and against this defendant J. E. Long."

The reasons offered in support of the ground of the motion just quoted are stated and amplified, at much length, in the motion, but we need not repeat them at this time.

The Trial Court overruled defendant J. E. Long's motion for a new trial, and he thereupon moved the Court to arrest the judgment against him in each of the cases, and this latter motion was based upon the same objections to "the finding of fact returned by the jury" as above quoted from the motion for a new trial with the same specifications. The motion in arrest of judgment was likewise overruled.

The first assignment of error made by J. E. Long that demands consideration here, is the one which challenges the action of the Trial Judge in overruling his motion for a directed verdict; and, as a matter of course, if this assignment is sustained, J. E. Long's remaining assignments of error become immaterial.

Defendant J. E. Long, sixty-five years of age, is a farmer, living upon and operating a farm near Pleasant View in Cheatham County, and also operating another farm in "the lower end of the County." His wife is dead, and had been dead six years at the time of the trial of this case below. On December 13, 1936, the members of his household consisted of his married daughter and W. F. Harris, her husband, his son, the defendant Jimmie Long, and a young woman by the name of Jinnett, a domestic servant. His daughter and son-in-law were not dependent on him, and his only "dependent" was his minor son, the defendant Jimmie Long.

December 13, 1936, was Sunday, and in the afternoon of that day defendant Jimmie Long took his father's automobile from the garage at his father's home, under the circumstances hereinafter stated, and went to the home of a neighbor, where he was joined by another youth, Henry Jinnett, and they drove to Ashland City and Joelton "to see some girls," and then, about nightfall, drove to Mt. Zion Church and there attended a meeting of the young peoples "League." The three minor plaintiffs (all young ladies in their "teens"), attended the League meeting, and when it closed they started to their homes walking along the highway "three abreast" and with their arms "locked."

A few minutes later, defendant Jimmie Long, driving the aforesaid automobile and accompanied by Henry Jinnett, started to his home along the same highway and in the same direction, and when he overtook the three young ladies, the automobile he was driving struck and injured them.

J. E. Long was not present when the accident occurred, and knew nothing of it until several hours later. In putting on their evidence in chief, the plaintiffs proved that a Chevrolet car, of a specified number and model, was registered in the office of the County Court Clerk of Cheatham County for the year of 1936, in the name of "J. E. Long, Pleasantview, Tennessee;" and plaintiffs also proved by a witness that after the accident defendant J. E. Long told witness that it was his car. If there had been no further proof on the subject, the presumption arising from registration, by virtue of Section 2702 of the Code, would have been sufficient to fix liability upon J. E. Long, if the proof otherwise fixed liability upon Jimmie Long, the driver of the car.

However, the presumption thus arising was rebuttable, and there was much proof by and on behalf of defendant J. E. Long tending to rebut it, a mere summary of which will now be stated.

J. E. Long testified that he did not buy or maintain the car in question for use as a family car, but bought it solely for his own business purposes; that no one had or exercised the right to use it without his express permission; that his son, Jimmie, frequently drove the car for him when he (J. E. Long) was in the car, and he sometimes sent Jimmie on trips in his (J. E. Long's) business; but that Jimmie was absolutely forbidden to use the car for his own purposes without express permission, and when Jimmie had asked permission to use it for a pleasure trip, such permission had rarely been granted, and that these restrictions had been imposed with especial stringency during the six weeks or two months immediately preceding the 13th of December, 1936, because of friction that had arisen on account of his efforts to prevent his said son from using the car on pleasure trips. In this connection, we quote an excerpt from the testimony of defendant J. E. Long, as follows:

"Q. Where did you keep the key? A. We had a nail in the house to keep the key on.

"Q. Did anybody have permission to use this car? A. No sir.

"Q. About six weeks or two months before the 13th of December, 1936, did any trouble arise or any dispute happen by anybody about the use of this car? A. Me and my son had a racket. Well, he fixed to go off in the car. The boy knowed I forbid him going in it. I told him I didn't mean for him to have the car that night. He would slip the car out every once in a while, but I have never let him drive the car any hardly without someone with him, and none on his own pleasure, and that night he got mad. We have never had any trouble except over that car. That night he got mad but didn't say much, that was after dark, he went on to his room and went to bed. Next morning he got up he was still mad. After breakfast he got up and said he was going to leave. I told him to go anywhere he wanted to

and he would get every penny he made. He had a crop of tobacco there, and I told him I would strip it out and give him every cent it brought. He went off that morning and come back that evening. When he got back he never said a word about the car. He just quit taking it. He didn't bother it at all for two months, but anyway one Sunday evening we went down to a little farm below me, so we come back and he put the car in the garage and locked it up. So' after that I don't think I went in the house but I went on to the field to see about some cattle, the pasture was in the back, and it had about give out, the boy was watching me when I left the house, and that was the night he took the car.

"Q. Did you know he was going any place in it? A. I knowed nothing about it.

"Q. Did you buy that car for your boy to ride around at night in? A. No, I didn't. I have always objected to this night going.

"Q. It wasn't with your approval that he left at all? A. No, it wasn't.

"Q. Do you remember who was at your house when you had this row? A. Yes, my son-in-law, his wife, his mother and another young lady, and Ligie Long.

"Q. What was Mr. Long doing there? A. He just come to stay all night.

"Q. You say the boy got mad and threatened to leave home? A. Yes, he did leave.

"Q. He got back home about supper time? A. Yes, that was the longest and lonesomest day I ever put over my head. I had raised the boy up there been good to him.

"Q. Did that change your attitude toward him using the car? A. No, I stuck to my proposition about him using that car.

"Q. Have you ever let anybody use it without your permission? A. There never was no one ever touched that car without my permission except when that boy slipped it out."

The character of defendant J. E. Long for truth and veracity is supported by the testimony of several witnesses and is not attacked. That particular part of his testimony which we have hereinbefore stated is corroborated by his son-in-law, W. F. Harris (who lived in his home), his cousin E. L. Long (who was visiting in J. E. Long's home at the time the aforesaid "racket" occurred), and by Jimmie Long.

Certain pages in the cross-examinations of J. E. Long, Jimmie Long, E. L. Long and W. F. Harris, and testimony of the plaintiffs' witness James Erwin Teasley, are cited in plaintiffs' reply brief for support of plaintiffs' contention that there was material evidence to support the verdict of the jury against J. E. Long.

We have re-examined all of the evidence thus cited, and we find

nothing therein which contradicts or discredits the testimony of J. E. Long.

We are of the opinion that the undisputed evidence shows that the automobile in question was not being used by Jimmie Long at the time of the accident with the permission or consent of J. E. Long; that said car was not then being used on any business for J. E. Long; that said car was not bought or maintained and used by J. E. Long as a "family purpose" car; and that Jimmie Long was not then driving the car as the agent or servant of J. E. Long.

The "family purpose doctrine" rests upon the doctrine of agency. Raines v. Mercer, 165 Tenn., 415, 420, 55 S. W. (2d), 263; Keller v. Truck Company, 151 Tenn., 427, 437, 269 S. W., 914; 5 Am. Juris., page 699, section 359.

The relationship of the parties and that the son was a minor, is not controlling. Scates v. Sandefer, 163 Tenn., 558, 564, 44 S. W. (2d), 310.

"Clearly, a parent cannot, apart from statute, be held liable where a child takes the parent's car for a purpose of his own, without the parent's knowledge or consent, or against his command. This is so even under the family purpose doctrine." 5 Am. Juris., pages 700, 701, section 360.

The family purpose doctrine "has no application where the car is taken surreptitiously or in violation of orders, thus, although a father may purchase an automobile for the general use of his family, he nevertheless retains the right to deny its use to any member when he sees fit; and when he does so, he cannot be held liable where the member surreptitiously takes the car after permission to use it has been refused and negligently operates it to the injury of another." 5 Am. Juris., page 707, section 368.

The assignments of defendant J. E. Long which challenge the action of the Trial Court in overruling his motion for a directed verdict are sustained.

In view of our ruling that there was no material evidence to sustain a verdict against J. E. Long, his remaining assignments of error become immaterial, and need not be considered herein.

In the consideration of defendant Jimmie Long's assignments of error, we will not undertake to dispose of them in the order of their assignment, but will follow the order which seems to us most convenient.

Defendant Jimmie Long's twelfth assignment of error is that "the verdict of the jury, which is a special verdict or a general verdict with special findings of fact, does not make a sufficient response or finding of fact on the determinative issues, on which the liability of this plaintiff in error depends, to support a judgment of the Court in favor of the defendants in error or either of them against the plaintiff in

error, and, therefore, the Court is without the power or a right, either to imply or to find such determinative facts.''

■ We have hereinbefore quoted in full the verdict returned by the jury. The jury was not directed to return a special verdict, and there was no request that the jury should be so directed. It was, therefore, optional with the jury whether they should return a general or a special verdict. Life & Casualty Insurance Co. v. Robertson, 6 Tenn. App., 43, 53.

It is not an easy matter to determine whether the verdict in the instant case is a special verdict or a general verdict; but if it contains the essentials of a verdict upon which a judgment against Jimmie Long may be rendered, the mere matter of definition is not important.

■ We may disregard the findings of the jury with respect to J. E. Long without necessarily vitiating the verdict with respect to Jimmie Long, for, ''matter contained in a verdict which is immaterial or not responsive to the issues may be treated as surplusage, and rejected, so as to validate the verdict, if the remaining portion thereof is responsive to the issues and not otherwise objectionable.'' Abbott's Civil Jury Trials, page 747.

By reference to the verdict, ante herein, it will be seen that the jury found as follows: ''We find that Jimmie Long . . . did on the 13th of Dec. 1936, drive an automobile . . . on the old Nashville and Clarksville Pike in the Second District of Cheatham County, Tennessee, in a reckless and careless manner, as a result of which three girls to-wit: Miss Louise Tomlin, Miss Ruby Anderson and Miss Lois Krantz were struck by said automobile while driven by Jimmie Long . . . and that said girls were painfully injured by the said automobile when struck by said automobile, due to the careless and reckless driving of said Jimmie Long, and in consideration of which we find that the said three girls and their fathers are entitled to recover damages for said injuries, from the said Jimmie Long . . . in the following amount:'' (then follows the names and amounts).

■ As might be expected of a jury untrained in legal terminology, the verdict in this case is inartificially worded, but ''a special verdict is sufficient, however, if it expresses the intention of the jury, and when, upon the matters in issue, it is sufficiently definite to enable the Court to pronounce judgment thereon. And a verdict is not bad for informality if the matter in issue may be determined from it. A special verdict good in substance is good though inartificially worded by the jury.'' Abbott's Civil Jury Trials, page 809.

We think a fair interpretation of the verdict is that, on the date and at the place named in the declarations, Jimmie Long drove an automobile in a reckless and careless manner, as a result of which

reckless and careless driving of said automobile by Jimmie Long the "three girls" (naming them) were struck by said automobile and painfully injured; that the aforesaid injuries of the "three girls" were due to the careless and reckless driving of Jimmie Long, and that upon the facts thus found, the jury assessed the damages of each plaintiff, respectively, as set out in the verdict.

Such was, we think, the manifest intention of the jury when the verdict is read in connection with the pleadings in the case, and that the verdict contained, in substance, all the essentials of a valid verdict. Jimmie Long's twelfth assignment is overruled.

Jimmie Long assigns error upon the exclusion of certain testimony offered by him, which is stated in his first assignment as follows:

"In the course of the trial, Plaintiff in Error offered to prove by his witness, J. K. Simpkins, Clerk of the County Court of Cheatham County, Tennessee, certain traffic regulations issued by the Department of Finance & Taxation, by reading from a pamphlet furnished his office by said Department (Exhibit A to his deposition), the instructions to be given children walking on the highway, to-wit: 'To walk on the left side of the road facing traffic,' 'and when in groups walk in single file.' The Defendant in Error objected to this evidence and the Court sustained the objection, thereby excluding it from the Jury over the exception of Plaintiff in Error. It was preserved by Plaintiff in Error and placed in the record in the absence of the Jury and made a part of the Bill of Exceptions and is set forth in the Motion for a New Trial."

"The instructions to be given children walking on the highway," which it was thus sought to introduce in evidence, were not law, and were not promulgated by any one authorized by law to make such regulations. We are not aware of any recognized rule under which they were admissible in evidence, and said first assignment of error is overruled.

Jimmie Long's second assignment of error is that, "The Defendant in Error, Louise Tomlin, was permitted to testify over the objection of the Plaintiff in Error that, after the accident had occurred, 'Henry got out, came around there, and Jimmie said, 'Stand up, d—— —— and walk,' I said, 'Jimmie, you fool you, I can't walk, my leg is broken,' then Jimmie got a hold of me and stretched me out in front of the car.' "

And his third assignment is that, "The witness, Virgil Simmons was permitted to testify over the objection of the Plaintiff in Error, that, after the accident had happened, Ruby Anderson said to Jimmie Long: 'Looks like you tried to run over us,' and Jimmie Long said, 'You are a G— d—— l——,' and struck at her, and then he said, 'You God-damn-son-of-abitch, I will kill you,' talking to me, because

I told him not to hit my niece, and then the witness knocked Jimmie down and then Jimmie struck the witness.''

The chief argument offered for support of the second and third assignments, supra, is that they relate to testimony with respect to statements and conduct of Jimmie Long after the collision. This is true, but it was manifestly a very few minutes after the collision, while all the parties were present, and under such circumstances as to reflect much light upon the condition and mental attitude of Jimmie Long when, a few minutes theretofore, he had driven the car against the three girls. The second and third assignments are overruled.

■■■ Jimmie Long's fourth assignment of error is as follows: ''The witness, Doctor J. J. Ashby, was permitted to testify, over the objection of the plaintiff in error in detail concerning X-ray pictures exhibited to the jury, of a bone fracture, which pictures he did not take.'' This assignment is overruled for the reason that it does not conform to the published Rule of this Court governing assignments of error, which requires that ''When the error alleged is to the admission or rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected, with citation of record where the evidence and ruling may be found.'' See Appendix to 155 Tenn., page XII.

Doctor Ashby was the physician and surgeon who attended and treated plaintiff Louise Tomlin at the Protestant Hospital, in Nashville, and the X-ray pictures in question were made on his order by ''the technician of the Protestant Hospital,'' and were used by Doctor Ashby at the hospital as a means of ascertaining the location and character of the fractures of Louise Tomlin's leg which was broken by the impact of the automobile driven by defendant Jimmie Long. Under these circumstances, the fact that the X-ray pictures were not made by Doctor Ashby certainly did not render incompetent all of his testimony ''concerning'' them, and the failure of the fourth assignment of error, supra, to specify the particular part or parts of his testimony thus intended to be challenged, illustrates the necessity for the application of the Rule above quoted.

■■■ Through his fifth assignment Jimmie Long says that the Trial Court erred in charging the jury as follows:

''While on the subject, I will say too, that the law recognizes a sudden emergency and, when confronted thereby, a person is not chargeable with as high a degree of care as one otherwise would be. Confronted with sudden and imminent danger, one's best judgment may dictate a course that later turns out to be wrong. The test is, did the person, in such emergency, act as an ordinarily prudent person would have acted under similar circumstances.''

The criticism of this instruction is that the Court omitted the quali-

fication that one cannot claim the benefit of the "emergency doctrine" when the emergency was created by his own negligence. But there was no affirmative error in the instruction thus given, and the defendant made no request for additional instructions on the subject. The fifth assignment of error is overruled.

The sixth and seventh assignments of Jimmie Long complain of certain excerpts from the charge which contain, in substance, the instruction that contributory negligence on the part of the minor plaintiffs would not bar recovery if the wrong on the part of the defendant was so wilful and wanton as to imply a desire or willingness to inflict injury.

There was some evidence which justified the submission of this matter to the jury, and the instruction was not erroneous. Stagner v. Craig, 159 Tenn., 511, 19 S. W. (2d), 234; Consolidated Coach Co. v. McCord, 171 Tenn., 253, 258, 102 S. W. (2d), 53, and other cases there cited. The sixth and seventh assignments of error are overruled.

Through his eighth assignment Jimmie Long asserts that the Trial Judge erred in charging the theory of the defendants; and through his tenth assignment he asserts that the Trial Judge erred in charging the theory of the plaintiffs. If the Trial Judge did not correctly interpret and state the theories of the parties, respectively, as presented by their pleadings, proof and argument of counsel, (the sources from which the Trial Court ordinarily deduces the respective theories of the parties) it was the duty of the defendant, through his counsel, to call the matter to the attention of the Court at the time and request a correction; and a failure to do so was a waiver of the error. Elkin Motor Co. v. Ragland, 6 Tenn. App., 166, 174; Hayes v. Cheatham, 6 Lea 1, 7.; McColgan v. Langford, 6 Lea 108, 117; Malone v. Searight, 8 Lea 91, 94; Slattery v. Lea, 11 Lea 9, 12. The eighth and tenth assignments of error are overruled.

The ninth assignment of defendant Jimmie Long says that the Trial Court erred in permitting the plaintiffs' witness James Erwin Teasley, over the objection of defendant, to testify in rebuttal; and substantial excerpts from his testimony are copied into the assignment.

The point of this assignment is, that it was error to admit Teasley's testimony after the defendants had introduced all their evidence. Whether Teasley's testimony was or not, in strictness, properly admissible as rebuttal evidence, there are at least two sufficient answers to this assignment, viz: (1) the order of the introduction of evidence rests in the sound discretion of the Trial Judge, and the record discloses no abuse of that discretion in this instance, and (2) the testimony of Teasley was confined altogether to the effort to fix liability upon J. E. Long, and it had no bearing upon

the liability or non-liability of Jimmie Long; hence Jimmie could not have been prejudiced by its introduction at any stage of the trial. The ninth assignment is overruled.

Jimmie Long's eleventh assignment is that, "The charge of the Court, as a whole, is conflicting, contradictory and confusing to the jury."

This assignment is too general and indefinite to merit consideration as an assignment of error, and it is overruled.

Jimmie Long's thirteenth assignment, if sufficiently definite and specific to constitute a good assignment of error at all, makes the same question as the twelfth assignment, which we have overruled for reasons hereinbefore stated, and the thirteenth assignment is likewise overruled.

Under his fourteenth assignment it is insisted for Jimmie Long that "in walking arm in arm abreast upon the highway, and in jumping in front of the automobile just before the impact," Louise Tomlin, Lois Krantz and Ruby Anderson were guilty of contributory negligence which barred the plaintiffs' actions.

There is no assignment asserting that Jimmie Long was not guilty of negligence as charged in the declarations; hence, for the purposes of this appeal, his negligence is conceded. We think that, on the evidence in this case, it could not be held, as a matter of law, that the minor plaintiffs were guilty of contributory negligence.

Negligence, briefly defined, is a lack of ordinary care. "Ordinary care is that degree of care which a person of reasonable prudence would exercise under a given state of facts appearing in the evidence in a cause, or in a state of facts similar thereto. . . . What a person of reasonable prudence would have done under the same or similar circumstances must be determined by the jury from their knowledge of mankind, and of how persons of reasonable prudence usually deport themselves in relation to their surroundings." Nashville, C. & St. L. Railroad v. Wade, 127 Tenn., 154, 158, 153 S. W., 1120, 1121, Ann. Cas., 1914B, 1020.

"The question of contributory negligence, as well as the question of negligence, is ordinarily for the jury. Even though the facts be undisputed, if intelligent minds might draw different conclusions as to whether, under circumstances conceded, the conduct of a plaintiff was that of an ordinarily prudent man, the matter should be left to the jury. The court should draw no inference when in doubt, but only in those cases where the evidence is without material conflict, and such that all reasonable men must reach the same conclusion therefrom. It is only in cases where the evidence is susceptible of no other fair inference that the court is justified in instructing the jury, as a matter of law, that the plaintiff has been guilty of contributory negligence which would bar his recovery." Philip Carey Roofing & Mfg. Co. v.

Black, 129 Tenn., 30, 36, 164 S. W., 1183, 1185, 51 L. R. A. (N. S.), 340. The fourteenth assignment of error is overruled.

 Jimmie Long's fifteenth (and last) assignment is as follows:

"The Trial Court was in error in giving an oral instruction in charge to the Jury at the oral request of the attorney for the Defendants in Error, after he had delivered his general charge, which oral charge was in the following words:

" 'I have used in the charge the expression—express permission and implied permission. While the terms explain themselves, at the suggestion of counsel for the Plaintiffs, I charge you that express permission or consent is where one gives another person leave to do a certain thing at a certain time, as where a father expressly gives his son authority to use an automobile at a particular time, that is express permission. Of course, implied permission is where a person, by his line of conduct has shown a disposition to permit another person to do a certain thing and raises no objection thereto. In other words, I charge if you find that Mr. Long over a period of time, permitted and allowed his son to use his automobile and made no complaint about it from time to time, then I charge you that that would be implied permission for him to use it whether there was any express permission or not.' "

It is obvious that the "oral charge" thus quoted, relates entirely to the defense of J. E. Long, and did not affect the defense of Jimmie Long in any respect; hence he cannot predicate error thereon. The fifteenth assignment is overruled.

It results that the judgments against J. E. Long are reversed, the verdicts as to him are set aside, and all of the six suits against him are dismissed.

The several separate judgments against Jimmie Long and in favor of the six plaintiffs, respectively, are affirmed, and judgments will be entered here accordingly, with interest upon each of said judgments from the date of the final judgment overruling Jimmie Long's motion for a new trial below (November 22, 1937), and for costs of the Circuit Court as adjudged by that Court.

A lien will be declared upon the several recoveries of the plaintiffs for the fees of the plaintiffs' attorneys as adjudged and declared by the trial Court.

The costs of the appeal will be divided—one-half of same will be adjudged against defendant Jimmie Long and the sureties on his appeal bond, and one-half against the three adult plaintiffs, viz: John Tomlim, D. A. Krantz and C. H. Anderson.

Crownover and Felts, JJ., concur.