HUFFMAN v. GRAY.—225 S. W. (2d) 87.

Middle Section.    July 2, 1949.

Petition for Certiorari denied by Supreme Court, December 12, 1949.

Roberts & Roberts, of Nashville, for plaintiff in error.

Lawson H. Myers, of Fayetteville, and Harold Hayes, of Lynchburg, for defendant in error.

HOWELL, J. This suit resulted from an automobile accident which happened on August 28, 1947, in Huntsville, Alabama. The plaintiff was a guest in the automobile of the defendant, who was driving the car at the time and they were out riding on a pleasure trip.

The declaration alleged that when they reached the intersection of Meridian and Green Streets in Huntsville, the defendant wilfully, wrongfully, negligently and wantonly drove his automobile across Meridian Street and directly into the path of an oncoming car driven by a city Policeman of Huntsville and that the said Policeman had the right of way on Meridian Street and the defendant without looking or paying any attention to his driving attempted to make a left turn into Green Street. It was further alleged that the plaintiff was sitting on the right hand side of the driver's seat of defendant's car and the police car struck the right front door of defendant's car against which plaintiff was leaning, causing her head to crash into the windshield, cutting a gash in her throat eight inches long, cutting another gash on the left side of her forehead three inches long, another three inch gash in her left arm, all requiring stitches and causing permanent scars on her face and neck. It is further alleged that plaintiff is twenty-three years of age and by reason of the injuries sustained is permanently disfigured, marked and scared.

The declaration further alleged that the suit accrued under Section 95, Title 36 of the 1940 Code of Alabama, hereinafter set out and alleged that the defendant was guilty of wilful and wanton misconduct in the operation of the automobile and that such operation of the automobile and such misconduct was responsible for her injuries. The defendant filed a plea of not guilty.

Upon the trial before the Court and jury there was a verdict of the jury in favor of the plaintiff for $5,000 which, upon the motion for a new trial, was reduced by the trial Judge to $4,500. The remittitur was accepted by the plaintiff under protest.

By proper procedure the defendant has perfected an appeal in error to this Court and has assigned errors. The assignments of error raise the questions that there is no evidence to support the verdict, that the Court erred in overruling defendant's motion for a directed verdict, and that the verdict as reduced is excessive.

No errors based upon the charge of the Court are assigned, and therefore the questions before this Court are: Is there any evidence to support the verdict and is it excessive?

The Alabama Statute referred to is as follows: "Liable only for willful or wanton misconduct.—The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."

It was not contended that the defendant was guilty of wilful misconduct, but it is insisted that the accident was the result of the wanton misconduct of the defendant.

The charge of the Court as to wanton misconduct is not excepted to and is in part as follows:

"The driver of the car must be guilty of wanton misconduct and that wanton misconduct must be the proxi-

mate cause of the injury, which in our State, and I understand the same thing in Alabama, is substantially defined to be an act or omission which immediately causes or fails to prevent the injury. In other words if the man is guilty of wanton misconduct, and that that wanton misconduct was the proximate cause of the injury. You must find both of those by a preponderance of the proof before the plaintiff can recover.

"Now, addressing yourselves further to this wanton misconduct, because that is the gist of this plaintiff's lawsuit, she realizes she must fail or win by whether or not this driver of this car was guilty of wanton misconduct. The Supreme Court of Alabama says, in defining this, that wanton requires knowledge by the driver of the peril to the guest and of the probable consequences of his conduct, and that with reckless disregard of such consequences he pursued that conduct which proximately caused the death or which proximately caused the injury of the guest.

"It is defined further, 'Before one can be convicted of wantonness, the facts must show that he was conscious of his conduct and conscious from his knowledge of existing conditions that injury would likely or probably result from his conduct; that with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury. A willful or intentional act is not involved in wantonness, which may consist of an inadvertent failure to act by a person with knowledge that someone is probably in peril and the act or failure to act is in reckless disregard of the consequences.'

" 'Wantonness requires knowledge that the plaintiff, or guest, would be subject to danger of being injured

as a probable consequence of his conduct, and that with that knowledge, with reckless disregard of such consequences he pursued that conduct which proximately caused the injuries complained of.'

"Now, you take those general definitions and apply them to the facts in this case."

The record discloses that the defendant was driving his car, the plaintiff being on the seat with him, sitting with her back to the right front door of the car and facing the defendant, and was proceeding South along the right hand lane of traffic on Meridian Street in Huntsville. The street was straight and there was nothing to keep him from seeing the police car approaching from the opposite direction and he, without any warning signal of any kind, suddenly turned out of his lane of traffic and into the left hand side of the street when his car was struck by the police car.

The testimony of the plaintiff in part was:

"Q. When you got up to where this intersection is, tell this jury what happened at that point? A. Well, we were sitting talking and he made a bear to his left and went to his left right in front of the other car.

"Q. He went right in front of the other car? A. Yes, sir."

.    .    .    .    .    .

"Q. I will ask you whether or not Mr. Gray gave any signal at all that he was going to turn off of Meridian Street on that side? A. No, sir, he didn't give a signal at all.

"Q. As a matter of fact, was he paying any attention to his driving? A. No, sir.

"Mr. Roberts: I except to that.

"The Court: Yes.

"By Mr. Myers:

"Q. Did you observe whether or not he was looking in the way this policeman was coming? A No, he wasn't. He was watching me.

"Q. Watching you? A. Yes, sir.

"Q. Which was proper.

"Mr. Roberts: I think his conduct is excusable, under those circumstances, and that question is immaterial and irrelevant.

"Mr. Myers: I think it is very proper.

"Q. When he made that turn you are talking about, you said he made no signal. Did he or not, in making his turn, turn directly in the path of this policeman as he came north? A. He turned right in front of him.

"Q. The policeman was traveling which way, was he traveling in an opposite direction from Mr. Gray? A. He was coming facing—hit us on the right hand side when he turned.

"Q. What I am getting at, the policeman, was he coming towards Fayetteville, north? A. Yes, sir.

"Q. Mr. Gray was traveling towards Huntsville before he made the turn? A. Yes, sir.

"Q. He was traveling south? A. Yes, sir.

"The Court: The policeman was on Meridian.

"Mr. Myers: Yes.

"Q. As you proceeded, as you told the jury, tell what happened, Miss Geneva, relative to the wreck? A. We went to Huntsville, he made the left hand turn, was going to turn off at this street, gave no signal, and wasn't even watching where he was going. The policeman came down Meridian and hit us on the right hand side.

"Q. Was that about where you were sitting? (Indicating.) A. Right where I was sitting.

"Q. Go ahead and tell what happened. A. It threw me through the windshield, and when it did it cut my neck and they taken 16 stitches in my neck, and it cut my head on the left hand side, and my arm."

.    .    .    .    .    .

"Q. Did he make a quick, sharp turn, or did he gradually ease over there and drive over on the left for some piece? A. He just turned right quick.

"Q. Right quick? A. Yes, sir."

A policeman who was driving the police car which struck the defendant's car said in part.

"Q. Did he give any signal for a left hand turn? No, sir, I didn't see any.

"Q. If he had given a signal, would there have been anything to have kept you from seeing it? A. No, sir.

"Q. Now, was that a sudden turn that he made there on Green Street, Mr. Norton? A. Yes, sir.

"Q. Turning off Meridian and on to Green, he would make a turn of about what angle, would you say? A. I imagine about 45.

"Q. About what? A. About 45, I imagine.

"Q. Could you avoid hitting him, Mr. Norton? A. No, sir, he was right on me, he just cut right out and he was driving fast.

"Q. He was driving fast? A. Yes, sir.

"Q. About how fast would you say he was going? A. I don't know, he must have been driving thirty-five or forty."

The defendant did not introduce any proof.

As shown no assignments are based upon the charge of the Court.

The trial Judge correctly submitted the issue of wanton negligence to the jury in a charge that was not excepted to.

There are many cases in Alabama, Tennessee and other states on the subject of wanton negligence.

The case of Covington v. Carley, 197 Miss. 535, 19 So. (2d) 817, 818 involving this same statute the Supreme Court of Mississippi said:

"As stated, the Alabama statute is not conceived as one penalizing negligence as such. Indeed, negligence and wilfulness or wantonness are incompatible terms. Gallegher v. Davis, 7 W. W. Harr., Del. 380, 183 A. 620; Law v. Gallegher, W. W . Harr., Del., 189, 197 A. 479; Biddle v. Boyd, 9 W. W. Harr., Del., 346, 199 A. 479; Robb v. Ramey Associates, Inc., 1 Terry, Del. 520, 14 A. (2d) 394. Otherwise expressed wantonness is a failure or refusal to exercise any care, while negligence is a failure to exercise due care. Mackey v. Robertson, 328 Pa. 504, 195 A. 870; Cousins v. Booksbaum, 51 Ohio App. 150, 200 N. E. 133.

"The applicable statute has been construed by the Alabama Court in Smith v. Roland, 243 Ala. 400, 10 So. (2d) 367, 369. In holding the evidence insufficient to take to the jury the question of a truck driver's wanton misconduct involving a collision whereby plaintiff as a guest was injured, it stated ' "Gross negligence" is negligence, not wantonness. Before one can be convicted of wantonness, the facts must show that he was conscious of his conduct and conscious from his knowledge of existing conditions that injury would likely or probably result from his conduct, that with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury.' See also Couch v. Hutcherson, 243 Ala. 47, 8 So. (2d) 580, 141 A. L. R. 697. This is the same Court which had held in Whiddon v. Malone, 220

Ala. 220, 124 So. 516, that falling asleep at the wheel is prima facie evidence of negligence.

"In the statute 'wilful' and 'wanton' are of equal gravity and are of equal legal import, Surgan v. Parker, La. App., 181 So 86. Where the misconduct is wilful, there is an intentional injury. If it is wanton, there is an intentional and wrongful act or omission whose resultant harm is consciously previsioned and recklessly ignored or disregarded. For one to be recklessly indifferent to results, such results must be presented to a sensible awareness of their reasonable certainty. One may not ignore an eventuality which he does not perceive. If he recks not of impending harm, it is not because he cares not. Indifference shuts its eyes to that which just before had been visible.

"Hence wantonness characterizes a mental state aware of misconduct and indifferent to its obvious consequences. Weir v. Lukes, 13 Cal. App. (2d) 312, 56 P. (2d) 987. More than this it is projected forward to and qualifies the ultimate injury, lending to it color of a gross and unconcerned willingness which, in its moral and legal aspects, is indistinguishable from intent. Thus the original act retains a status as an important but subordinate incident. Vessel v. Seaboard Air Line R. Co., 182 Ala. 589, 62 So. 180; 67 C. J. 318. Whereas in mere negligence cases the act or omission is paramount and the resultant harm is fastened to the actor by the fibers of a fiction that he intended a result which was natural and probable. The only difference between the legal import of wilfulness and wantonness in the statute is that while both contemplate a foreseeable harm, the former chooses to cause injury and the latter chooses not to avoid it."

In the Alabama case of Dean v. Adams, 249 Ala. 319, 30 So. (2d) 903, 904, the Supreme Court said: "We have often defined wantonness as requiring knowledge that plaintiff or some person situated as she was, would be subject to danger of being injured as a probable consequence of his conduct, and that with reckless disregard of such consequences he pursued that conduct which proximately caused the injuries complained of. Couch v. Hutcherson, 243 Ala. 47, 8 So. (2d) 580, 141 A. L. R. 697; Rainey v. State, 245 Ala. 458, 17 So. (2d) 687; Simon v. Goodman, 244 Ala. 422, 13 So. (2d) 679; Jack Cole v. Walker, 240 Ala. 683, 200 So. 768; Daniel v. Motes, 228 Ala. 454, 153 So. 727; Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So. (2d) 505; Claude Jones & Son v. Lair, 245 Ala. 441, 445, 17 So. (2d) 577.''

Also in the Alabama case of Atlantic Coast Line v. Brackin, 248 Ala. 459, 28 So. (2d) 193, 194, the Supreme Court of Alabama said: "A willful or intentional act is not involved in wantonness, which may consist of an inadvertent failure to act by a person with knowledge that someone is probably in peril and the act or failure to act is in reckless disregard of the consequences.''

There is ample testimony in this record upon which the jury could have based its finding that this defendant under the facts of this case acted in reckless disregard of the consequences and he must have known that to pull suddenly out of the line of traffic in which he was driving and into the traffic lane of the oncoming cars would imperil the safety of his passenger.

In the case of Inter-City Trucking Co. v. Daniels, 181 Tenn. 126 on page 129, 178 S. W. (2d) 756, 757 et seq. our Supreme Court said: "In Stagner v. Craig, 159 Tenn. 511, 517, 19 S. W. (2d) 234, 236, since approved

and followed in Consolidated Coach Co. v. McCord, 171 Tenn. 253 at page 258, 102 S. W. (2d) 53, citing other cases, 'gross' negligence was defined as 'such entire want of care as would raise a presumption of a conscious indifference to consequences.' If one knowingly, consciously, violates a duty imposed upon him to take measures prescribed to protect the lives of others, he is guilty of more than a mere neglect to exercise ordinary care. As was said in the Stagner case, 'This, of course, means more than, on the one hand, a want of ordinary care—a common definition of negligence. And yet, it does not cross the border line of studied or deliberate intent to do the specific injury. The mental attitude is one of indifference to injurious consequences, conscious recklessness of the rights of others. Such conduct may well be characterized as wanton. Bouvier defines wanton negligence as: 'A heedless and reckless disregard for another's rights, with the consciousness that the act or omission to act may result in injury to another. Hazle v. Southern Pac. Co., C. C., 173 F. 431. (2 Bouv. Law Dict., Rawle's Third Revision, p. 3418).' "

Also in the case of Consolidated Coach Company, Inc., v. McCord, 171 Tenn. 253, 102 S. W. (2d) 53, 54, Chief Justice Green said: "As the case presents itself to us, therefore, we are forced to think there was abundant evidence to lead the jury to the conclusion that the bus was being operated through Red Bank in wanton or wilful disregard of the rights and safety of others. The accident occurred about noon. The locality was thickly settled; stores and their customers were on either side of the highway; cars and trucks parked there; all within the limits of a school zone with a speed limit of 20 miles an hour. To operate such a vehicle as the bus of plain-

tiff in error through such a community, in the middle of the day, under the circumstances set out, evinces 'such entire want of care as would raise presumption of conscious indifference to consequences.' Negligence like this is characterized as wanton negligence in Stagner v. Craig, 159 Tenn. 511, 19 S. W. (2d) 234''.

. It is insisted that the verdict is excessive.

This twenty-three year old woman testified as to her injuries and the care and attention she had received and that she has scars on her face and neck which disfigured her permanently. She appeared before the trial Judge and the jury in person and there was no contradictory testimony. Under these circumstances we cannot say that $4,500 is excessive.

The assignments of error are overruled and the judgment of the Circuit Court is affirmed.

A judgment will be entered here in favor of the plaintiff and against the defendant for $4,500 with interest from September 11, 1948, and the costs of the case.

Affirmed and judgment rendered.

Felts and Hickerson, JJ., concur.